Kenneth MAXWELL, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 48A05–0003–CR–114.

Court of Appeals of Indiana.

July 14, 2000.

Transfer Denied Sept. 14, 2000.

John T. Wilson, Anderson, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Timothy W. Beam, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

KIRSCH, Judge

Kenneth Maxwell was convicted of two counts of attempted murder, as Class A felonies,[1] criminal recklessness, a Class D felony,[2] and criminal confinement, a Class B felony.[3] Upon appeal, he presents the following issues for our review, which we consolidate and restate as:

I. Whether the State presented sufficient evidence to support his convictions for attempted murder and criminal confinement.

II. Whether sufficient evidence supports the jury's verdict of guilty but mentally ill.

III. Whether the trial court erred in imposing a consecutive sentence of 123 years in contravention of IC 35–50–1–2, which provides that, except for crimes of violence, the maximum term of consecutive sentences arising from the same episode of criminal conduct may be no more than the presumptive sentence for the next higher class of felony.

We affirm Maxwell's convictions, but remand for re-sentencing.

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to the verdict reveal that on January 1, 1999, Maxwell, his girlfriend, Diane Meir, and his six-year old daughter went to Dan Wright's home. Maxwell and Wright were best friends growing up, but their relationship had become strained. Maxwell went to Wright's home for the purpose of apologizing. Before entering the home, Maxwell told Meir

not to lock the truck doors because they would be leaving in a hurry. Upon entering the home, Maxwell and Wright went to have a cigarette. Meir, who was visibly upset, stayed with Mrs. Wright and asked Mrs. Wright to call the police because of Maxwell's behavior.

Maxwell told Wright that he was no longer Kenny, but instead Mark. He also told Wright that he was abused as a child and that the end of the world was coming so Wright should get provisions and ammunition ready. Wright told Maxwell, "you are as bad psychologically and emotionally as I've ever seen you and I'm afraid...." *Record* at 172. Wright further told Maxwell that he was afraid for the safety of Meir and Maxwell's daughter if Maxwell left with them that evening. Wright began looking through the phone book trying to locate a mental health hotline.

Before Wright located the number, there was a knock at the door. Wright opened the door to Officer William Richardson, who asked whether there was a problem. Wright noticed Richardson react to something behind him and when Wright turned around he saw Maxwell with both arms outstretched and firing. Richardson pulled out his weapon and returned fire before retreating to his patrol car to report that shots had been fired. Maxwell grabbed his six-year old daughter and went toward the front door yelling, "Back off man, I'll kill her. I'll kill her." *Record* at 176. Maxwell then turned around, dropped his gun, laid on the floor, and began singing. His daughter went to the upstairs of the home. Wright picked up the gun as officers entered the home to arrest Maxwell.

Maxwell was subsequently evaluated by psychiatrists who found that he was suffering from a psychotic episode and believed that Richardson was sent by Satan

---

1. *See* IC 35–41–5–1; IC 35–42–1–1.

2. *See* IC 35–42–2–2(b).

3. *See* IC 35–42–3–3(a)(1).

to kill him. The psychiatrists testified at trial that Maxwell was unable to appreciate the wrongfulness of his acts at the time the crimes were committed. Despite this testimony, the jury rejected Maxwell's insanity defense and found him guilty but mentally ill on two counts of attempted murder, criminal confinement, and criminal recklessness. The trial court consecutively sentenced Maxwell to fifty years for each of the attempted murder convictions, twenty years for the criminal confinement conviction, and three years for the criminal recklessness conviction, for a total of 123 years. Maxwell now appeals.

## DISCUSSION AND DECISION

### I. Sufficiency of the Evidence

■ Our standard of review for a challenge to the sufficiency of the evidence is wellsettled. *Ellis v. State,* 707 N.E.2d 797, 800 (Ind.1999). When reviewing claims of insufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Sanders v. State,* 704 N.E.2d 119, 123 (Ind.1999). Rather, we examine only the evidence most favorable to the State along with all reasonable inferences to be drawn therefrom. *Id.* We will not disturb the conviction if there exists substantive evidence of probative value to establish every material element of an offense beyond a reasonable doubt. *Id.* It is the function of the trier of fact to resolve conflicts in testimony, and to determine the weight of the evidence and the credibility of the witnesses. *Jones v. State,* 701 N.E.2d 863, 867 (Ind.Ct.App. 1998).

Maxwell initially argues that the State presented insufficient evidence to support his convictions for attempted murder. Specifically, he contends that the State failed to establish that he specifically intended to kill the victims.

■ To convict a defendant of attempted murder, the State must prove beyond a reasonable doubt that the defendant, acting with the specific intent to kill, engaged in conduct which constitutes a substantial step toward the commission of murder. IC 35–41–5–1; 35–42–1–1; *Mitchem v. State,* 685 N.E.2d 671, 676 (Ind.1997). Our supreme court has unequivocally determined that the requisite intent to kill may be inferred from the use of a deadly weapon in a manner likely to cause death or great bodily harm. *Bartlett v. State,* 711 N.E.2d 497, 500 (Ind.1999); *Wilson v. State,* 697 N.E.2d 466, 475 (Ind.1998); *Barany v. State,* 658 N.E.2d 60, 65 (Ind. 1995); *Shelton v. State,* 602 N.E.2d 1017, 1022 (Ind.1992); *Johnson v. State,* 455 N.E.2d 932, 936 (Ind.1983).

■ Here, the State presented sufficient evidence to sustain Maxwell's conviction for attempted murder. The evidence shows that Maxwell arrived at Wright's home armed with a .44 caliber handgun, which he later pointed and shot at Wright and Richardson. Further, the shooting occurred at a close range. Such act constitutes the use of a deadly weapon in a manner likely to cause death or great bodily harm. A reasonable trier of fact could have found that Maxwell acted with the required intent to kill based upon this evidence. Therefore, the evidence is sufficient to convict Maxwell of attempted murder.

Maxwell next argues that the evidence is insufficient to sustain his criminal confinement conviction. A defendant may be convicted of criminal confinement if the State proves beyond a reasonable doubt that the defendant: (1) knowingly or intentionally; (2) confined another person; (3) without the person's consent. IC 35–42–3–3. Maxwell contends that the evidence fails to establish that the confinement occurred without his daughter's consent. We must disagree.

■■ Where circumstantial evidence is used to establish guilt, the question for the reviewing court is whether reasonable minds could reach the inferences drawn by the jury; if so, there is sufficient evidence. *Bruce v. State,* 268 Ind. 180, 375 N.E.2d

1042, 1080 (1978), *cert. denied,* 439 U.S. 988, 99 S.Ct. 586, 58 L.Ed.2d 662. Furthermore, we "need not determine whether the circumstantial evidence is adequate to overcome every reasonable hypothesis of innocence, but rather whether inferences may be reasonably drawn from that evidence which supports the verdict beyond a reasonable doubt." *Bustamante v. State,* 557 N.E.2d 1313, 1318 (Ind.1990) (citation omitted).

■ Here, although the State did not present direct evidence that Maxwell's daughter did not consent to being confined, it did present sufficient circumstantial evidence from which the fact-finder could have concluded beyond a reasonable doubt that Maxwell confined his daughter without her consent. Maxwell grabbed his daughter, held her hostage, and threatened to kill her. It would be a rare case indeed where a person would consent to being a hostage. Accordingly, the jury could reasonably have concluded that Maxwell confined his daughter knowingly or intentionally without her consent. Because the evidence and reasonable inferences are sufficient to prove lack of consent, the verdict was not contrary to law.

## II. Guilty But Mentally Ill Verdict

Maxwell contends that the jury's verdict of guilty but mentally ill is contrary to law because he demonstrated at trial that he was insane at the time the offenses were committed. He argues that the jury acted outside the scope of its authority in rejecting his insanity defense. Yet, citing *Barany v. State,* 658 N.E.2d 60 (Ind.1995), he recognizes that the jury is free to disregard the testimony of experts and rely upon the testimony of other witnesses.

■ The determination of sanity is a question for the trier of fact. The jury is free to disregard the testimony of experts and rely upon that of lay witnesses. *Campbell v. State,* 536 N.E.2d 285 (Ind. 1989). Accordingly, the standard of review is a deferential one. We will reverse the trier of fact's determination only if the evidence is without conflict and leads to but one conclusion and the trier of fact has reached an opposite conclusion. *Weeks v. State,* 697 N.E.2d 28, 29 (Ind.1998).

■ Here, as in *Barany,* the medical experts unanimously concluded that Maxwell was legally insane at the time of the crimes. Two psychiatrists testified that Maxwell was suffering from a psychotic episode at the time of the crimes and unable to appreciate the wrongfulness of his acts. However, also like *Barany,* the State offered lay witness testimony indicating that Maxwell was sane. Prior to arriving at Wright's home, Maxwell located Meir's .44 caliber handgun that had been hidden in a dresser. He told Meir not to lock the truck doors because they would be leaving in a hurry. Further, although Maxwell claimed that he believed Richardson was an agent of the devil sent to harm him, he also attempted to kill his friend and threatened to kill his own daughter when confronted by the police. The jury could have decided that evidence about Maxwell's behavior was more probative of his actual mental health at the time of the crimes than the opinion of medical experts. Because there is conflicting evidence, we decline to invade the jury's fact-finding province.

## III. Sentencing

■ Maxwell argues, and the State concedes, that his 123–year sentence violates IC 35–50–1–2. We agree. While the determination of a defendant's sentence is within the trial court's discretion, and will be reversed only upon a showing of abuse of discretion, the legislature prescribes penalties for crimes and the trial court's discretion does not extend beyond the statutory limits. *Ballard v. State,* 715 N.E.2d 1276, 1279 (Ind.Ct.App.1999). Thus, in reviewing a sentence, we must consider whether it is statutorily authorized. *Id.* Further, we are bound to correct sentences that violate the trial court's statuto-

ry authority to impose consecutive sentences under IC 35–50–1–2. *Id.*

Here, the trial court stated,

"this may have been a criminal episode, but I think crimes of violence are exempt from sentencing under the criminal episode provision. But the Court's (sic) on review have shaped their own sentencing perimeters and guidelines, it seems to me to be sometimes irrespective of what the statute calls, so I don't know what's going to happen with this sentence on review."

*Record* at 568. IC 35–50–1–2(c) states:

"Except as provided in subsection (d) or (e), the court shall determine whether terms of imprisonment shall be served concurrently or consecutively. The court may consider the aggravating and mitigating circumstances in IC 35–38–1–7.1(b) and IC 35–38–1–7.1(c) in making a determination under this subsection. The court may order terms of imprisonment to be served consecutively even if the sentences are not imposed at the same time. However, except for crimes of violence, the total of the consecutive terms of imprisonment, exclusive of terms of imprisonment under IC 35–50–2–8 and IC 35–50–2–10, to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the presumptive sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted."

IC 35–50–1–2(a) defines the following as crimes of violence: (1) murder (IC 35–42–1–1); (2) voluntary manslaughter (IC 35–42–1–3); (3) involuntary manslaughter (IC 35–42–1–4); (4) reckless homicide (IC 35–42–1–5); (5) aggravated battery (IC 35–42–2–1.5); (6) kidnapping (IC 35–42–3–2); (7) rape (IC 35–42–4–1); (8) criminal deviate conduct (IC 35–42–4–2); (9) child molesting (IC 35–42–4–3); (10) robbery as a Class A felony or a Class B felony (IC 35–42–5–1); (11) burglary as a Class A felony or a Class B felony (IC 35–43–2–1); or (12) causing death when operating a motor vehicle (IC 9–30–5–5).

 Recently, in *Ballard*, we were faced with the issue of whether Class C felony battery, which is not specifically included in IC 35–50–1–2(a) as a crime of violence, nevertheless could be considered a crime of violence for consecutive sentencing purposes. We held that it could not.

"In construing a statute, generally, we will only interpret a statute that is ambiguous. *Indianapolis Historic Partners v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1224, 1227 (Ind. Tax Ct.1998). A statute is ambiguous when it is susceptible to more than one interpretation. *Ad Craft, Inc. v. Bd. of Zoning Appeals of Evansville and Vanderburgh County*, 693 N.E.2d 110, 114 (Ind.Ct.App.1998), *trans. denied.* There is no need to apply the rules of statutory construction when a statute is unambiguous. *Indianapolis Historic Partners*, 694 N.E.2d at 1227.

Here, the statute is clear. The legislature delineated the exact crimes by name and citation that were to be considered violent crimes. If battery as a Class C felony had been intended to be included as a crime of violence, it would have appeared in Indiana Code section 35–50–1–2(a). The statute is unambiguous: battery was not intended to be included as a violent crime."

*Id.* Applying this reasoning, we hold that the trial court erred by applying the exception language of the consecutive sentence statute when determining Maxwell's sentence.[4] Attempted murder, criminal confinement, and criminal recklessness are not included among the list of violent crimes. Accordingly, this case is remanded to the trial court for re-sentencing.

---

4. Because we remand for re-sentencing, we do not reach the issue raised by Maxwell of whether the sentence was manifestly unreasonable.

We affirm Maxwell's convictions, but remand for re-sentencing.

BAKER, J., and RILEY, J., concur.