Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 30 2012, 9:30 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JAMES A. EDGAR**
J. Edgar Law Offices, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RONDELL BOYD, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1108-CR-725 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Carol J. Orbison, Judge
The Honorable Anne Flannelly, Judge Pro Tempore
Cause No. 49G22-1011-FC-86797

**March 30, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Appellant-defendant Rondell Boyd appeals his convictions for three counts of Child Molesting,[1] a class C felony, challenging the sufficiency of the evidence. Specifically, Boyd contends that the convictions must be set aside because "there existed at trial the possibility that [the victim's] accusations were based on having had a dream." Appellant's Br. p. 8. Thus, Boyd claims that the victim's testimony was inherently unbelievable and incredibly dubious. Finding the evidence sufficient, we affirm the judgment of the trial court.

## FACTS

In May 2010, thirteen-year-old L.B. was living with her mother, Tonette Bateman, and her young sister Tamia, in Indianapolis. L.B. had known Boyd since she was approximately one year old when Boyd and Bateman began a relationship. Boyd was the father of L.B.'s sister, Tamia.

Boyd and L.B. got along well and had a very close relationship. In fact, Boyd was the only father figure that L.B. had known and, although he was not her biological father, L.B. referred to Boyd as "Daddy." Tr. p. 10, 38. Even though Boyd did not live with Tonette and the girls, he would often visit them at their residence.

On May 19, 2010, Boyd arrived at the residence to take Tonette on errands, and later watch movies in Tonette's bedroom. Thereafter, L.B. went to her room to lie down and watch television. Tonette fell asleep in her bedroom. Boyd then walked into L.B.'s bedroom and asked what she was doing. After L.B. responded that she was watching

---

[1] Ind. Code § 35-42-4-3.

television, Boyd began to massage her side. L.B. then laid down on her back and closed her eyes as if she was going to sleep. Boyd continued to massage L.B. and eventually placed his hand under her shorts. Boyd stopped, returned briefly to Tonette's room and then went back to L.B.'s bedroom.

Boyd turned off the lights and television and laid back down on L.B.'s bed. Boyd again began to massage L.B. and felt underneath her shorts down to her pubic hair. Boyd placed his hand on L.B.'s vagina, pulled his hand out, lifted L.B.'s top, and began to lick her stomach. L.B. felt his tongue on her stomach. Boyd then lifted L.B.'s shirt further and began licking her breasts. L.B., who was awake and could see Boyd through her half-closed eyes, did not move or make a sound because she was frightened. At some point, Boyd stopped licking L.B. and pulled her shirt down.

Thereafter, Boyd grabbed L.B.'s hand and made her touch his penis. Boyd then got up and walked to the edge of the bed to L.B.'s feet. Boyd got on the bed on his knees, pulled L.B.'s shorts and underwear below her knees, spread L.B.'s legs apart, and looked at her vagina "for a couple of minutes." Tr. p. 20-21. Boyd then pulled L.B.'s panties and shorts back up, and again laid down beside L.B. Boyd then took L.B.'s hand and made her touch his penis again. Boyd then returned to Tonette's bedroom.

L.B. got out of bed, went to the bathroom, and heard Boyd and her mother talking. Boyd eventually left, and L.B. went to sleep. The next morning, L.B. thought about what Boyd had done to her and wondered for a moment if she had been dreaming. L.B. was shocked that Boyd could have performed such acts because he had been like a father to

3

her. Thus, L.B. could not imagine that Boyd would do those things to her. However, L.B. was certain that the incidents occurred because she remembered seeing everything that Boyd had done to her. However, L.B. could not tell her mother what Boyd had done because she was frightened.

L.B. wrote her mother a note, explaining what Boyd had done to her the previous evening. Tonette then called Boyd and read the note to him. Boyd denied any wrongdoing, asked Tonette what she was going to do with the note, and begged her not to tell anyone. Tonette told Boyd that she did not want him at her residence anymore. Because Tonette did not know what to do, she did not contact the police until July 2010.

Following a police investigation, Boyd was charged with three counts of child molesting, a class C felony.

Following a bench trial on July 7, 2011, Boyd was found guilty on all counts. Thereafter, Boyd was sentenced to eight years of incarceration on each count and ordered the sentences to run concurrently. Boyd now appeals.

DISCUSSION AND DECISION

I. Standard of Review

In reviewing a challenge to the sufficiency of the evidence, we will not reweigh the evidence or judge the credibility of the witnesses. Moreover, we respect the jury's exclusive province to weigh conflicting evidence. McHenry v. State, 820 N.E.2d 124, 126 (Ind. 2005). We examine the evidence most favorable to the verdict and the reasonable inferences drawn therefrom. Brasher v. State, 746 N.E.2d 71, 72 (Ind. 2001).

4

We consider only the probative evidence and reasonable inferences supporting the verdict.  McHenry, 820 N.E.2d at 126.  The evidence need not be so overwhelming as to overcome every reasonable hypothesis of innocence.  Drane v. State, 867 N.E.2d 144, 147 (Ind. 2007).  We must affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt.  Clark v. State, 728 N.E.2d 880, 887 (Ind. Ct. App. 2000).  The uncorroborated testimony of one witness is sufficient to sustain a conviction.  Carter v. State, 754 N.E.2d 877, 880 (Ind. 2001).

## II.  Boyd's Claims

As noted above, Boyd argues that his convictions must be set aside because there was a possibility that L.B.'s accusations were based on a dream that she had.  Therefore, Boyd contends that "closely scrutinizing" L.B.'s testimony in these circumstances warrants reversal.  Appellant's Br. p. 8.

In addressing Boyd's contentions, we first note that the statute under which Boyd was charged, Indiana Code section 35-42-4-3, provides that

> A person who, with a child under fourteen (14) years of age, performs or submits to any fondling or touching, of either the child or the older person, with intent to arouse or to satisfy the sexual desires of either the child or the older person, commits child molesting, a Class C felony.

In this case, thirteen-year-old L.B. testified that on the evening of May 19, 2010, Boyd touched her vagina and licked her breasts.  Tr. p. 15, 17-18.  Boyd also placed L.B.'s hand on his penis on two separate occasions.  Id. at 18-22.

5

Notwithstanding this evidence, Boyd essentially argues that his convictions must be set aside because L.B.'s testimony could not be believed. More specifically, Boyd focuses on the possibility that L.B. had only dreamed about the incident and initially wondered whether it had "really happened." Tr. p. 23. In light of L.B.'s initial belief, Boyd maintains that the incredible dubiosity rule dictates the outcome of this case, which provides that "if a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, the defendant's conviction may be reversed." Fajardo v. State, 859 N.E.2d 1201, 1208 (Ind. 2007). This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. Id. Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that it runs counter to human experience, and no reasonable person could believe it. Stephenson v. State, 742 N.E.2d 463, 498 (Ind. 2001).

Even though L.B. initially thought that she may have only dreamed about the incidents, L.B. ultimately testified that she was sure Boyd committed the acts because she remembered "seeing everything in person." Tr. p. 24-25. L.B.'s initial thoughts about whether the acts actually occurred stemmed from the betrayal of the relationship between L.B. and Boyd. More specifically, L.B. testified that Boyd "had been like a father to her" and was the only "father figure" she had in her life since she was only a year old. Id. at 24.

In this case, the incredible dubiosity rule does not apply because Boyd did not show any inherent contradiction in L.B.'s testimony. Moreover, L.B.'s testimony did not reflect any reasonable doubt as to whether Boyd committed the charged acts of molesting. In our view, Boyd is merely inviting us to reweigh the evidence, which we will not do. McHenry, 820 N.E.2d at 126-27. The trial judge was the trier of fact in this case, was in a better position to weigh evidence and judge credibility, and was entitled to determine which version of the incident to credit. Johnson v. State, 659 N.E.2d 242, 244 (Ind. Ct. App. 1995). It is the function of the trier of fact to resolve conflicts in testimony, and to determine the weight of the evidence and the credibility of the witnesses. Maxwell v. State, 731 N.E.2d 459, 462 (Ind. Ct. App. 2000). And the trier of fact is free to believe or disbelieve witnesses, as it sees fit. McClendon v. State, 671 N.E.2d 486, 488 (Ind. Ct. App. 1996).

Here, the trial court heard and considered all the evidence and concluded that Boyd committed the three counts of child molesting beyond a reasonable doubt. We will not substitute our decision for that of the trier of fact. Thus, we decline to set aside Boyd's convictions.

The judgment of the trial court is affirmed.

DARDEN, J., and BAILEY, J., concur.

7