**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

**FILED**

Dec 30 2013, 8:54 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ELLEN M. O'CONNOR**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| GEORGE WILLIAMS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1304-CR-326 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Lisa F. Borges, Judge
Cause No. 49G04-1205-FA-33286

**December 30, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

George Williams appeals his conviction for attempted murder as a class A felony. Williams raises one issue which we revise and restate as whether the evidence is sufficient to sustain his conviction. We affirm.

FACTS AND PROCEDURAL HISTORY

On May 9, 2012, Brian Hunter went to his home to eat lunch and let his puppy out of its crate. As he approached the back door of his home, he noticed that the curtain on the back door was fluttering and that the window was broken. Hunter entered the home and, upon turning a corner, observed Williams in the home about six feet away. Williams immediately reached into his front pocket and produced a Glock .40 caliber pistol that Hunter recognized as belonging to him. Hunter raised his hands, took a step back, and said "[h]ey, it's not worth it. Chill out." Transcript at 37. Williams ordered Hunter to "[o]pen the f------ safe," and Hunter asked Williams again to "chill out" and told him to "[t]ake whatever you want." Id. Williams again told Hunter to open the safe, which was in the basement, and Hunter said he needed a key. Williams then told Hunter to lie on the floor and throw his cell phone, and Hunter went down on his stomach and threw one of the two cell phones in his possession. Hunter then observed Williams walk into the kitchen while Williams kept pointing the gun towards Hunter, and as Hunter was "looking at [Williams]," Hunter observed Williams look "in both directions and pull[] the gun up and sho[o]t [him]." Id. at 39. Hunter was shot in the upper back between his shoulder blades. He heard the sound of glass crunching under Williams's feet and the screen door shut, and he called 911.

2

Officer Brian Mack responded to the call, and Hunter was able to provide the officer with a description of Williams and to tell Officer Mack that Williams shot him with Hunter's gun. Officers collected evidence, including a palm print on a jewelry box, another palm print on the basement door frame, and a tube sock in the backyard. On May 13, 2012, Detective Bill Rogers, a homicide investigator with the Indianapolis Metropolitan Police Department, received results from one of the palm prints indicating that the print belonged to Williams. Police arrested Williams on May 21, 2012, at the residence of friends in which both he and his girlfriend Miranda were hiding. Also, skin cells recovered from the tube sock matched Williams's DNA.

On May 18, 2012, the State charged Williams with Count I, attempted murder as a class A felony; Count II, burglary as a class A felony; Count III, criminal confinement as a class B felony; Count IV, theft as a class D felony; and Count V, carrying a handgun without a license as a class A misdemeanor. On February 25, 2013, the court commenced a jury trial in which evidence consistent with the foregoing was presented. At trial, Miranda, who was at that time living with Williams, testified that Williams arrived home on May 9, 2012 and "was freaking out and he was like, 'I think I shot somebody. I think I shot somebody,' . . . . there was blood on his shoes." Id. at 97. She testified that Williams told her he had been "robbing" a house and that a man had "scared" him. Id. at 98. She testified: "[h]e told me the dude was like laying in the doorway and he tried to like jump over him and the dude grabbed his leg and he just shot and ran." Id. Miranda also testified that she noticed Williams had a gun, that Williams had told her to walk down the street to the scene of the shooting and provide police with a

3

phony physical description of the perpetrator, and that she had complied. Suprina Doss, Miranda's mother, testified that Miranda called her the day of the shooting, and Williams then spoke to her and told her: "You are not going to believe what I just did. I was doing a burglary and I shot . . . I shot a man . . . the guy come home and I shot him right in his back." Id. at 80.

On February 26, 2013, the jury found Williams guilty as charged. On March 13, 2013, the court held a sentencing hearing and sentenced Williams to forty years, including thirty-five years executed in the Department of Correction followed by five years of community corrections work release, on Count I, ten years suspended on Count II to be served consecutive to Count I, and one year on Count V, to be served concurrent with Counts I and II.[1] Thus, Williams received a sentence of thirty-five years in the Department of Correction, followed by five years of work release, followed by ten years suspended, for a total of fifty years.

DISCUSSION

The issue is whether the evidence is sufficient to sustain Williams's conviction for attempted murder. When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. Bailey v. State, 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." Id. We will affirm if there is substantial evidence of probative value such that a reasonable

---

[1] The court entered its sentence on Count II, burglary, as a class B felony. The court did not enter convictions on Counts III and IV.

trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. Id.

The offense of attempted murder is governed by Ind. Code § 35-42-1-1 and Ind. Code § 35-41-5-1. To convict a defendant of attempted murder, the State must prove beyond a reasonable doubt that the defendant, acting with the specific intent to kill, engaged in conduct which constitutes a substantial step toward the commission of murder. Mitchem v. State, 685 N.E.2d 671, 676 (Ind. 1997).

According to Williams, the evidence is insufficient to demonstrate that he had the specific intent to kill Hunter. Specifically, Williams argues that "at the time he shot Brian Hunter, he had the intent to get out and away from his bungled burglary, not to kill him." Appellant's Brief at 7. Williams argues that his "intent was proven at trial through his immediate reaction to his girl friend [sic] and mother: 'Oh, my god. I think I just shot somebody. I think I just shot somebody,' like he didn't know if he actually shot him, or not." Id. at 9 (quoting Transcript at 99). He also maintains that, during the burglary, "[h]e was standing over Brian Hunter with the gun" and that "[i]f he intended to kill him, he had the opportunity to shoot him in a more likely fatal location." Id. at 10. The State argues that Williams is merely asking this court to reweigh the evidence.

The Indiana Supreme Court has "unequivocally determined that the requisite intent to kill may be inferred from the use of a deadly weapon in a manner likely to cause death or great bodily harm." Maxwell v. State, 731 N.E.2d 459, 462 (Ind. Ct. App. 2000) (citing in part Bartlert v. State, 711 N.E.2d 497, 500 (Ind. 1999), and Wilson v. State, 697 N.E.2d 466, 475 (Ind. 1998), reh'g denied), trans. denied. "[D]ischarging a weapon in

the direction of a victim is substantial evidence from which the jury could infer intent to kill." Perez v. State, 872 N.E.2d 208, 213-214 (Ind. Ct. App. 2007) (quoting Corbin v. State, 840 N.E.2d 424, 429 (Ind. Ct. App. 2006) (citing Leon v. State, 525 N.E.2d 331, 332 (Ind. 1988))), trans. denied.

The evidence favorable to the conviction reveals that Williams was burglarizing Hunter's home when Hunter returned home. Williams ordered Hunter to lie down on the floor and throw his cell phone away from his person, and Hunter complied. Hunter observed Williams walk into the kitchen while Williams kept his gun pointed at Hunter, and as Hunter "was sitting there looking at [Williams]," Hunter observed Williams look "in both directions and pull[] the gun up and sho[o]t [Hunter]" in the back between his shoulder blades. Transcript at 39. Firing a shot into Hunter's back while Hunter was laying on the ground "undoubtedly constitutes using a deadly weapon in a manner likely to cause death." See Cook v. State, 675 N.E.2d 687, 692 (Ind. 1996). Based upon the record, we conclude that the State presented evidence of probative value from which a reasonable jury could have found that Williams had the specific intent to kill Hunter and that Williams was guilty beyond a reasonable doubt of attempted murder. See Maxwell, 731 N.E.2d at 462-463 (holding that the evidence was sufficient to sustain the defendant's conviction for attempted murder where he pointed and shot his .44 caliber handgun at two victims at close range). Williams's arguments amount to an invitation to reweigh the evidence or judge the credibility of witnesses, which we cannot do. See Bailey, 907 N.E.2d at 1005.

## CONCLUSION

For the foregoing reasons, we affirm Williams's conviction for attempted murder as a class A felony.

Affirmed.

ROBB, C.J., and BARNES, J., concur.