## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 19 2015, 8:54 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Kurt A. Young
Nashville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Karl Scharnberg
Deputy Attorney General

# IN THE
# COURT OF APPEALS OF INDIANA

Zachary L. Ray,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

November 19, 2015

Court of Appeals Case No.
49A02-1504-CR-209

Appeal from the Marion Superior Court, Criminal Division 2

The Honorable Marc Rothenberg, Judge

Trial Court Cause No.
49G02-1308-MR-52125

**Altice, Judge.**

**Case Summary**

[1] Zachary L. Ray appeals his conviction of Murder,[1] a felony. Relying on the doctrine of incredible dubiosity, Ray contends that the evidence was insufficient to support his conviction.

[2] We affirm.

## Facts & Procedural History

[3] On April 8, 2013, Lori McKinney went to a friend's home on the south side of Indianapolis. Ray and Richard Mays were inside using crack cocaine. This was McKinney's first time meeting Ray. The men asked McKinney to help them "hit a lick", and Ray outlined the plan. *Transcript* at 54. In exchange for five Vicodin pills, McKinney agreed to lure a man out of a bar for Ray and Mays to rob.

[4] The trio drove in McKinney's truck to a local bar, the Colonial Inn, that evening. McKinney backed into the parking spot and then went inside, while Mays and Ray waited outside. McKinney encountered Mark Putnam in the bar, and he bought her a beer. Putnam eventually left the bar with McKinney, and his friend, Tony Ventura, exited at the same time. Before Putnam entered McKinney's truck to leave with her, he noticed two men hiding in the bed of the truck. He immediately refused to go with McKinney and, instead, went to

---

[1] Ind. Code § 35-42-1-1.

Ventura's vehicle for a ride home. After Ventura circled around the bar, he noticed that McKinney's truck was gone.

[5] Indeed, McKinney, Ray, and Mays had moved the truck to a parking lot across the street. Ray instructed McKinney to go back inside the bar and try again. When she expressed hesitation, Ray threatened, "Bitch, you're going back in." *Id*. at 60. McKinney went back into the bar and eventually began conversing with Michael Campbell. At one point, McKinney observed Ray and Mays standing at each entrance. McKinney eventually asked Campbell if he wanted to go to another nearby bar with her, and he agreed.

[6] Upon exiting the bar after midnight, McKinney walked in front of Campbell as she led him to her truck. Mays and Ray approached Campbell from behind, and Mays punched Campbell in the back of the head. Campbell fell to the ground without moving and Ray started kicking him. Mays and Ray then went through Campbell's pockets, removing his wallet and cell phone. McKinney entered her truck and Mays and Ray followed. Mays had Campbell's phone, and Ray had his wallet. McKinney drove them away from the scene, as the men expressed disappointment with the amount of money obtained.

[7] Shortly thereafter, a police officer patrolling the area discovered Campbell, who was lying on the ground unconscious with his pockets inside out. Campbell remained in a coma and died on May 13 as a result of the blunt force trauma to his head that he sustained during the attack. In addition to a skull fracture to

the back of his head and a broken jaw, Campbell had contusions on his body that were consistent with being kicked or punched.

[8] The police investigation led to the arrest of McKinney on April 19. At that time, she provided a statement to police, denying involvement and indicating that she had witnessed three unknown men attack Campbell outside the bar.

[9] On June 11, Ray was arrested on an unrelated matter and volunteered information regarding this case while being interrogated by police. He indicated that he knew about Richard Mays robbing and killing a man about two months earlier in a parking lot at the Colonial Inn. Ray stated that Mays punched the man in the head before robbing him of about thirty dollars, and that a girl named Lori was in jail for the robbery. Ray explained that he witnessed the robbery while sitting with Lori in her truck.

[10] Thereafter, on July 24, McKinney gave another statement to police in which she implicated both Mays and Ray. McKinney agreed to testify for the State in exchange for a favorable plea agreement.

[11] The State charged Ray and Mays with felony murder and class A felony robbery on August 9, 2013. Ray's jury trial commenced on February 23, 2015. The State called a number of witnesses, including McKinney, Putnam, Ventura, and John Cline. Cline testified regarding conversations he had with Ray while they were incarcerated together. Ray asked Cline for advice and shared significant details with Cline regarding the robbery. These details, to which Cline testified, aligned in large part with McKinney's account and implicated

Ray in the planning and execution of the robbery. Additionally, the State admitted into evidence a photograph of McKinney leaving the bar with the victim shortly before the attack and Ray's June 11 statement.

[12] The jury found Ray guilty of murder and robbery as charged. At the sentencing hearing on March 18, 2015, the trial court vacated the robbery conviction and sentenced Ray to sixty-three years in prison for Campbell's murder.

## Discussion & Decision

[13] Ray contends that the evidence is insufficient to sustain his conviction for murder. More specifically, he contends that McKinney's testimony is incredibly dubious and should not be credited.

[14] Our Supreme Court has recently reiterated the limited scope of the incredible dubiosity rule, which requires that there be: "1) a sole testifying witness; 2) testimony that is inherently contradictory, equivocal, or the result of coercion; and 3) a complete absence of circumstantial evidence." *Moore v. State*, 27 N.E.3d 749, 756 (Ind. 2015). While the standard is not impossible to meet, it is difficult and "one that requires great ambiguity and inconsistency in the evidence." *Id*. (quoting *Edwards v. State*, 753 N.E.2d 618, 622 (Ind. 2001)). In other words, the sole witness's testimony "must be so convoluted and/or contrary to human experience that no reasonable person could believe it." *Id*. (quoting *Edwards*, 753 N.E.2d at 622).

There was nothing about McKinney's testimony that was equivocal or inherently contradictory. She consistently testified regarding the attack and robbery of Campbell. Further, the inconsistencies between her trial testimony and her initial statement to police did not render her trial testimony incredibly dubious. *See Stephenson v. State*, 742 N.E.2d 463 (Ind. 2001).

Moreover, the State presented additional witnesses and circumstantial evidence that supported McKinney's detailed testimony. This included Ray's own statement to police, pictures of McKinney leaving the bar with Campbell, and the testimony of Putnam, Ventura, and Cline.

The incredible dubiosity rule is simply not applicable here, and it was within the jury's prerogative to believe McKinney's trial testimony. Accordingly, we reject Ray's invitation to reweigh the evidence and judge witness credibility. *See Maxwell v. State*, 731 N.E.2d 459, 462 (Ind. Ct. App. 2000) ("[i]t is the function of the trier of fact to resolve conflicts in testimony, and to determine the weight of the evidence and the credibility of the witnesses"), *trans. denied*. Ray's conviction was supported by sufficient evidence.

Judgment affirmed.

Riley, J., and Brown, J., concur.