## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 29 2016, 9:14 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kevin Wild
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Anthony Shockley,

*Appellant-Defendant*,

v.

State of Indiana,

*Appellee-Plaintiff*.

April 29, 2016

Court of Appeals Case No.
49A02-1510-CR-1540

Appeal from the Marion Superior Court

The Honorable Marc T. Rothenberg, Judge

Trial Court Cause No.
49G02-1106-FA-42372

**Brown, Judge.**

[1] Anthony Shockley appeals his convictions and sentence for two counts of attempted murder as class A felonies and attempted robbery as a class B felony. Shockley raises two issues which we revise and restate as:

I. Whether the evidence is sufficient to sustain Shockley's convictions for attempted murder as class A felonies; and

II. Whether his sentence is inappropriate in light of the nature of the offenses and the character of the offender.

We affirm.

### Facts and Procedural History

[2] On the evening of June 4, 2011, Shockley and Johnathan Williams had plans to attend a party, and Williams picked up Shockley and Jamar Perkins in Williams's grandmother's white Trailblazer. After finding out that the party had been canceled, however, the men had a conversation about robbing someone, and Shockley suggested going to the Cottages Apartments to find someone to rob.

[3] In the early hours of June 5, 2011, Quatonya Germany and Dominic Crockett were sitting in Germany's PT Cruiser under a carport at the Cottages Apartments and discussing their relationship when Germany noticed what she thought was a white SUV drive in front of them. She then observed two men she later identified as Shockley and Perkins approaching the car. Shockley proceeded to the front of Germany's car with a .22 caliber semi-automatic rifle, and Perkins went to the driver's side window holding a .380 caliber handgun. As Crockett started the car, Perkins aimed and fired his gun once towards the

driver's-side window, striking the window. Crockett then attempted to drive out of the carport, and Shockley aimed his weapon and fired several times at the front of the vehicle, leaving approximately seven bullet holes in the hood. Shockley also fired at least one additional shot at the back of the vehicle as Crockett drove away from the scene.

[4] Crockett was shot in the wrist, and he and Germany went to Community East Hospital. Indianapolis Metropolitan Police Department ("IMPD") Officer Michael Anderson arrived at the hospital in response to the shooting. A bullet fragment was discovered in the windshield of the vehicle, and a firearm expert later was unable to determine whether the bullet fragment had been fired from Shockley's or Perkins's gun. Officer Anderson went to Cottage Apartments where he recovered a .22 LR caliber live round and seven .22 LR caliber casings. IMPD Detective Chris Craighill also discovered a fired casing for a .380 caliber bullet later determined to have been fired by Perkins's gun.

[5] Later that same day, IMPD Detective Daniel Ryan stopped Williams because he was driving a vehicle matching the description given to the police by Germany, and he was arrested on June 8, 2011. Williams subsequently provided information that led to the investigation of Shockley and Perkins, and Shockley was arrested on June 13, 2011.

[6] On June 14, 2011, the State charged Shockley with two counts of attempted murder as class A felonies and one count of attempted robbery as a class B felony. Additionally, Shockley was prosecuted for murder and attempted

robbery as a class C felony for other criminal activity also occurring on the night of June 4, 2011 and the early morning hours of June 5, 2011, including the murder of Clayton Battice, under cause number 49G02-1106-MR-42263 ("Cause No. 42263"). Prior to trial in this case he was found guilty and sentenced to an aggregate term of sixty years executed on those convictions. *Shockley v. State*, No. 49A02-1212-CR-957, slip op. at 2-3 (Ind. Ct. App. July 23, 2013), *trans. denied*.

[7] On August 24, 2015, in advance of trial, the State amended the attempted robbery charge to delete certain words from the charging information. That same day, the court commenced a two-day jury trial, and on August 25, 2015, Shockley was found guilty as charged. On September 8, 2015, the court sentenced Shockley to forty years on each attempted murder conviction to be served consecutively and a concurrent eight years on the class B felony attempted robbery conviction, for an aggregate sentence of eighty years in the Department of Correction ("DOC"). The court also ordered that his eighty-year sentence and the sixty-year sentence in Cause No. 42263 should be served consecutively. Transcript at 357.

## *Discussion*

### I.

[8] The first issue is whether the evidence is sufficient to sustain Shockley's convictions for attempted murder as class A felonies. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the

credibility of witnesses. *Jordan v. State*, 656 N.E.2d 816, 817 (Ind. 1995), *reh'g denied*. Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Id.*

[9] The offense of attempted murder is governed by Ind. Code § 35-42-1-1 and Ind. Code § 35-41-5-1. To convict a defendant of attempted murder, the State must prove beyond a reasonable doubt that the defendant, acting with the specific intent to kill, engaged in conduct which constitutes a substantial step toward the commission of murder. *Mitchem v. State*, 685 N.E.2d 671, 676 (Ind. 1997). A "substantial step" toward the commission of a crime, for purposes of the crime of attempt, is any overt act beyond mere preparation and in furtherance of intent to commit an offense. *Hughes v. State*, 600 N.E.2d 130, 131 (Ind. Ct. App. 1992). Whether a defendant has taken a substantial step toward the commission of the crime is a question of fact to be decided by the trier of fact based on the particular circumstances of the case. *Id.* "[W]hen determining whether the defendant has taken a substantial step toward a crime, the focus is on what has been completed, not on what remains to be done." *Id.* at 132.

[10] In his brief, Shockley concedes that he fired "into the hood, tire, and lower body of the car," which he asserts "was reckless and even risky to the vehicle's occupants," but he maintains that "the circumstances show only an intent other than specifically to kill." Appellant's Brief at 12-13. He points to where the .22 caliber casings were found and notes his close proximity to the vehicle, and he

suggests that if he intended to kill the occupants he would have shot into the cabin. He argues that his intent was to rob the occupants, not kill them. The State argues that Shockley shot several times in the direction of the two victims which established his intent to kill.

[11] The Indiana Supreme Court has "unequivocally determined that the requisite intent to kill may be inferred from the use of a deadly weapon in a manner likely to cause death or great bodily harm." *Maxwell v. State*, 731 N.E.2d 459, 462 (Ind. Ct. App. 2000) (citing *Bartlett v. State*, 711 N.E.2d 497, 500 (Ind. 1999); *Wilson v. State*, 697 N.E.2d 466, 475 (Ind. 1998), *reh'g denied*; *Barany v. State*, 658 N.E.2d 60, 65 (Ind. 1995); *Shelton v. State*, 602 N.E.2d 1017, 1022 (Ind. 1992); *Johnson v. State*, 455 N.E.2d 932, 936 (Ind. 1983)), *trans. denied*. We look to the evidence and the reasonable inferences therefrom that support the verdict. *See Jordan*, 656 N.E.2d at 817. The evidence shows that Shockley, upon exiting the Trailblazer, proceeded to the front of Germany's car with a .22 LR caliber semi-automatic rifle, and as Crockett attempted to back out of the carport Shockley aimed his weapon and fired several times at the front of the vehicle, leaving approximately seven bullet holes in the hood. Shockley also fired at least one additional shot at the back of the vehicle as Crockett drove away from the scene. Shockley's argument is an invitation to reweigh the evidence, which we cannot do. *Id.*

[12] We conclude that the State presented evidence of probative value from which a reasonable jury could have determined beyond a reasonable doubt that Shockley was guilty of two counts of attempted murder. *See Cook v. State*, 675

N.E.2d 687, 692 (Ind. 1996) (holding that the evidence was sufficient to sustain the defendant's conviction for murder despite the defendant's argument that he did not intentionally shoot at the victim); *Maxwell*, 731 N.E.2d at 462-463 (Ind. Ct. App. 2000) (holding that the evidence was sufficient to sustain the defendant's conviction for attempted murder where he pointed and shot his .44 caliber handgun at two victims at close range).

## II.

[13] The next issue is whether Shockley's aggregate sentence of eighty years is inappropriate in light of the nature of the offenses and his character. Indiana Appellate Rule 7(B) provides that this court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Relief is available if, after due consideration of the trial court's sentencing decision, this court finds that in our independent judgment, the sentence is inappropriate in light of the nature of the offense and the character of the offender. *Hines v. State*, 30 N.E.3d 1216, 1225 (Ind. 2015). "[S]entencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Id.* (quoting *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008)). "[A]ppellate review should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any

individual count." *Cardwell*, 895 N.E.2d at 1225. "[W]hether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Hines*, 30 N.E.3d at 1225 (quoting *Cardwell*, 895 N.E.2d at 1224).

[14]    Shockley argues that, as argued in Part I, he did not have a specific intent to kill and was not first to shoot. He argues that, to the extent Crockett was injured, the evidence infers that the other shooter caused the injury. He also argues that he was only nineteen years old at the time, that his criminal history consisted of "only a juvenile B felony Burglary and Residential Entry as an adult," and that the sentence in this case and the other case are essentially a life sentence. Appellant's Brief at 18.

[15]    Our review of the nature of the offenses reveals that Shockley suggested to Williams and Perkins that they find someone to rob, and in pursuit thereof came upon a PT Cruiser occupied by Germany and Crockett, whom they did not know, while it was parked in a carport. Perkins and Shockley approached the vehicle while armed, and Shockley positioned himself at the front of the vehicle. Perkins fired his gun and struck the driver's side window, and Shockley fired several times at the front of the vehicle, leaving several holes in it. Shockley also fired at the back of the vehicle while it was leaving. Crockett was shot in the wrist.

[16] Our review of his character reveals that Shockley was nineteen years old at the time of the offenses. The Presentence Investigation Report ("PSI") reveals that he has been involved in gang activity, and as a juvenile, he had true findings for fleeing law enforcement and criminal conversion in 2008, and in 2010 a true finding was entered on a charge of burglary as a class B felony if committed by an adult. As an adult, in 2011 he was sentenced to 730 days with 718 days suspended for residential entry as a class D felony, and his probation was revoked on July 8, 2011. On the day he was arrested on the instant charges he was also arrested for murdering Clayton Battice, and was found guilty of that crime. *Shockley*, slip op. at 2-3.

[17] After due consideration, we conclude that Shockley has not sustained his burden of establishing that his sentence of eighty years, to be served consecutive to his sentence in Cause No. 42263 for murdering Clayton Battice, is inappropriate in light of the nature of the offense and his character.

## Conclusion

[18] For the foregoing reasons, we affirm Shockley's convictions and sentence for two counts of attempted murder as class A felonies and attempted robbery as a class B felony.

[19] Affirmed.

Baker, J., and May, J., concur.