## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 16 2016, 8:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Sean P. Hilgendorf
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General

Ian McLean
Matthew Elliott
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Michael Diaz,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 16, 2016

Court of Appeals Case No.
71A03-1603-CR-000629

Appeal from the St. Joseph Superior Court

The Hon. John M. Marnocha, Judge

Trial Court Cause No.
71D02-1508-F4-58

# Case Summary

On August 16, 2015, Appellant-Defendant Michael Diaz was arrested for burglary after he was identified by an eyewitness and the stolen property was found inside of his home. Appellee-Plaintiff the State of Indiana ("the State") subsequently charged Diaz with burglary as a Level 4 felony. Following a jury trial, Diaz was found guilty as charged. Diaz contends that the State produced insufficient evidence to support his conviction. Because there was sufficient evidence such that reasonable minds could reach the conclusion that Diaz committed burglary, we affirm.

# Facts and Procedural History[1]

On August 16, 2016 around 7:30 a.m., Michael Schimmel left for work after locking his front and back doors and closing the outer storm door. Schimmel lived at 1418 Delaware Street in Mishawaka, Indiana. Around 8:00 a.m. that same morning, Schimmel's neighbor, Gary Bryer was looking out his back door talking to the squirrels in his backyard when he saw a man walk out from behind Schimmel's house. That man was subsequently identified as Diaz. Bryer became suspicious because he did not recognize Diaz and did not believe that Schimmel had a roommate.

---

[1] We held oral argument in this case on December 6, 2016, at Fountain Central High School in Fountain County. We thank the members of the Fountain County Bar Association, Judges Susan Orr Henderson and Stephanie S. Campbell, and the students, faculty, and staff of Fountain Central High School for their gracious hospitality. We also commend counsel for the high quality of their arguments.

[3] Bryer watched Diaz walk out of the gate to Schimmel's fenced-in backyard, across Delaware Street, and down Burdette Street. The man was wearing a white shirt and blue pants and had a blue bandanna on his head. Bryer also noted that the man was carrying a white trash bag. Bryer continued to watch the man walk to a house on the far side of Burdette Street.

[4] When the man got to the house, he placed the trash bag on the porch and walked down the side of the house before Bryer lost sight of him. Bryer did not see the man come out of Schimmel's house nor did he see the man go into the house on Burdette Street. However, Bryer's security cameras captured Diaz walking down the sidewalk carrying a white trash bag.

[5] After seeing the man in Schimmel's yard, Bryer called Schimmel and asked him if he had a roommate. When Schimmel said that he did not have a roommate, Bryer told him that he would walk over to his house to see if anything was wrong. Following the call with Bryer, Schimmel called the police and left work to go check on his home.

[6] The police arrived at Schimmel's house around 8:05 a.m. The first three officers to arrive were Lieutenant Brian Costa, Sergeant Paul Robinson, and Officer Robert McCahil from the Mishawaka Police Department. They soon discovered that Schimmel's back door had been kicked in. They secured Schimmel's home by walking through the rear and checking for suspects or anyone injured. While in Schimmel's house, Lieutenant Costa observed that

the refrigerator door and several cupboard doors had been left open. Additionally, the drawers in the dresser in the rear bedroom had been opened.

[7]     Once Schimmel arrived home, he walked through his house to see if anything was missing or out of place. Schimmel noted that dressers in two of the three bedrooms had been opened, a closet door had been opened, and the items in one of the rooms had been "ruffled around." Tr. p. 35. Additionally, his back door had been kicked in, the outer storm door was open, and the door frame had been damaged. In the kitchen, Schimmel noted that the pantry door and refrigerator door had been left open. When Schimmel looked into his refrigerator, he saw that an eighteen-pack of Miller Light beer holding eight or nine sixteen-ounce cans was missing. In his pantry, among other things, Schimmel had white trash bags with gray drawstrings. Schimmel also confirmed that he had not given anyone permission to enter his home before or after he left for work that morning.

[8]     Officer McCahil and Lieutenant Costa subsequently spoke to Bryer who gave them a description of the man he had seen walking away from Schimmel's house and pointed out the house on Burdette Street that the man had walked to. After talking to Bryer, Sergeant Robinson instructed Officer McCahil to go to the rear of the house that Bryer had pointed out. The address of the house was 926 Burdette. While in the alley behind the house, Officer McCahil checked trash cans to see if he could find any evidence related to the burglary at Schimmel's house.

Around that same time, Officer Kirby Stoner was dispatched to 926 Burdette Street with a description of suspect and location of the burglary. While driving to 926 Burdette Street, Officer Stoner saw a man who resembled the suspect involved in the burglary roughly two blocks away walking towards the 7-Eleven gas station. However, Officer Stoner continued to drive to 926 Burdette Street.

When Officer Stoner arrived at 926 Burdette Street, he secured the front of the house while Sergeant Cynthia Reed spoke with Ken Robb, who lived at 922 Burdette Street. Sergeant Reed asked Robb if he knew who lived at 926 Burdette Street. As they were talking, Robb saw his neighbor walking toward him on the sidewalk and said "[w]ell here he comes right now." Tr. 131. Officer Stoner also identified the man as the same man he saw walking towards the 7-Eleven.

At that time, Officer Stoner and Sergeant Reed approached the man and asked for his name and identification. The man was identified as Diaz. He said his identification was in his house and pointed to 926 Burdette Street. After he identified 926 Burdette Street as his home, Officer Stoner handcuffed Diaz, patted him down, and waited for the search warrant for Diaz's home to be obtained. Diaz was detained at approximately 8:40 a.m.

After Diaz was detained, Lieutenant Costa drove Bryer to Diaz's house in order for him to make a positive identification. At that time, Diaz was wearing gray sweatpants, a white or gray shirt, and no bandana. Bryer identified Diaz as the

man he had seen walking around the side of Schimmel's house carrying the white trash bag.

[13] Once the search warrant was obtained, the officers searched Diaz's home for a white trash bag with a gray drawstring. During the search, Officer McCahil went into a bedroom in the back of the house. While he was in the bedroom, Officer McCahil observed several trash bags on the floor of the closet. Officer McCahil noted that all of the trash bags had red tie strings except for one bag which had a gray tie string. The bag with the gray tie appeared to have cylindrical objects that resembled beer cans in it. Upon making this discovery, Officer McCahil notified the other officers in the home. Detective Kevin Will joined Officer McCahil in the bedroom and removed the trash bag from the closet. The bag in question contained seven cold sixteen-ounce cans of Miller Lite beer. Additionally, Officer Paul Robinson found an empty eighteen-pack carton of Miller Lite sixteen-ounce beer in a trash can in the alley behind Diaz's house. The officers did not find any other white trash bags with gray ties or Miller Lite beer in Diaz's house. No finger prints were discovered at the scene or were found on any of the stolen property.

[14] On August 17, 2015, the State charged Diaz with burglary as a Level 4 felony. A jury trial was held on February 2, 2016 and February 3, 2016. On February 3, 2016, the jury found Diaz guilty of the charged offense. On March 9, 2016, the trial court sentenced Diaz to twelve years of incarceration.

# Discussion and Decision

On appeal, Diaz contends that the evidence is insufficient to sustain his conviction of Level 4 felony burglary. The Indiana Supreme Court has held that "[i]t is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction." *Drane v. State*, 867, N.E.2d 144, 146 (Ind. 2007). As such,

> [w]hen reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Id*. at 146-47 (internal citations, quotations, and footnotes omitted). "In essence, we assess only whether the verdict could be reached based on reasonable inferences that may be drawn from the evidence presented." *Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012) (emphasis in original). Furthermore, a conviction can be sustained on only the uncorroborated testimony of a single witness. *Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012) (citing *Ferrell v. State*, 565 N.E.2d 1070, 1072-73 (Ind. 1991)). The jury, acting as the trier-of-fact, is

free to believe whomever it sees fit. *See Klaff v. State*, 884 N.E.2d 272, 274 (Ind. Ct. App. 2008).

[16] Under Indiana Code section 35-43-2-1, "[a] person who breaks and enters a building or structure of another person, with intent to commit a felony or theft in it, commits burglary . . . a level 4 felony if the building or structure is a dwelling." Therefore, in order to prove that Diaz committed Level 4 felony burglary, the State was required to prove that Diaz broke in and entered the dwelling of another with the intent to commit a felony therein.

[17] In challenging the sufficiency of the evidence to prove that he committed the burglary, Diaz notes that his conviction was based on circumstantial evidence. Specifically, Diaz cites a lack of evidence that anyone actually witnessed him breaking and entering Schimmel's home. Further, Diaz argues that the State merely established that he was present in his own neighborhood at the time of the burglary and that he had Miller Lite beer in his home. Moreover, Diaz points to a lack of direct evidence that he kicked in Schimmel's back door; that he was not wearing jeans and a white t-shirt at the time he was arrested; and the lack of fingerprint evidence linking Diaz to the beer cans, the beer case, or Schimmel's home.

[18] "Whether the evidence is direct or circumstantial, we will not reweigh it or assess the credibility of witnesses." *Moor v. State*, 652 N.E.2d 53, 55 (Ind. 1995). "Where circumstantial evidence is used to establish guilt, the question for the reviewing court is whether reasonable minds could reach the inferences

drawn by the jury; if so, there is sufficient evidenc*e*." *Maxwell v. State*, 731 N.E.2d 459, 462 (Ind. Ct. App. 2000). "Furthermore, we 'need not determine whether the circumstantial evidence is adequate to overcome every reasonable hypothesis of innocence, but rather whether inferences may be reasonably drawn from that evidence which supports the verdict beyond a reasonable doubt.'" *Id.* at 463 (quoting *Bustamante v. State*, 557 N.E.2d 1313, 1318 (Ind. 1990)). "It is enough if an inference reasonably tending to support the conviction can be drawn from the circumstantial evidence." *Hayes v. State*, 876 N.E.2d 373, 375 (Ind. Ct. App. 2007).

[19]   Seemingly contrary to Diaz's assertions, the evidence demonstrates that Bryer identified Diaz as the man he saw walking away from the back of Schimmel's house with a white trash bag with a gray tie. The evidence further demonstrates that Diaz was captured on a security camera walking down the street with the same bag after leaving Schimmel's house. Additionally, the evidence indicates that the trash bag in which the cold beers were found was the same as the white trash bags that Schimmel kept in his kitchen. In light of these facts, we conclude that the evidence is sufficient to link Diaz to the burglary at Schimmel's house. Diaz's assertion to the contrary amounts to nothing more than an invitation for this court to reweigh the evidence which we will not do. See *Bailey*, 979 N.E.2d at 135.

[20]   The judgment is affirmed.

Baker, J., and Robb, J., concur.