Lee BARTLETT, Appellant (Defendant),

v.

STATE of Indiana, Appellee (Plaintiff).

No. 49S00–9705–CR–349.

Supreme Court of Indiana.

May 20, 1999.

S. Sargent Visher, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey Modisett, Attorney General of Indiana, John B. Herriman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SELBY, J.

Lee Bartlett was convicted of attempted murder, attempted rape, robbery, and two counts of kidnapping. His sentence was enhanced after he was found to be a habitual offender. In this direct appeal, Bartlett argues that the evidence was insufficient to convict him of attempted murder. He further argues that one kidnapping conviction cannot be sustained because the state failed to show that the victim was used as a hostage or shield as required by the kidnapping statute. Finally, Bartlett challenges the habitual offender enhancement. We reject all claims and affirm the original convictions and sentence.

### Factual and Procedural Background

The facts viewed most favorable to the State are as follows. Defendant, Lee Bartlett, first approached Peter Michael outside of Michael's house in 1994 and asked for a job. Michael employed Bartlett to paint the exterior of his house. In the early evening on June 10, 1994, Bartlett knocked on Michael's door and insisted upon using the bathroom. Bartlett came out of the bathroom pointing a gun at Michael, told him to put his hands in the air, and fiddled with the gun until Michael heard a click. Bartlett demanded that Michael get his billfold, became angry when Michael produced only twenty dollars, and insisted that Michael write a check for $300.00 to cash at the bank. Before they could leave, Michael's fiancee, Donna Barr, drove up to the house, used her own key to enter the house, and went upstairs calling Michael's name. Bartlett, who had moved Michael out of Barr's view, instructed Michael to call to Barr to come downstairs, where she saw Bartlett holding something to Michael's side under a towel. Bartlett showed Barr his gun and told Barr not to do anything stupid.

Bartlett ordered Barr and Michael into the truck. Barr got into the truck. Bartlett then ordered Michael to drive, removed the gun from Michael's side, and got in the truck next to Barr in the passenger seat. Bartlett placed the gun against Barr, and threatened to kill them both if they did anything stupid.

Michael drove to the bank where he procured the cash. At Bartlett's insistence, Michael next drove to a liquor store to purchase beer and cigarettes. Michael entered the liquor store first, followed a few minutes later by Barr and Bartlett. Bartlett stood next to Barr throughout the time at the liquor store, the gun at her side covered by a towel. Bartlett continuously threatened to kill both Barr and Michael if they said or did anything stupid.

After returning to the house, Barr fixed dinner. Bartlett kept the gun trained on Michael or Barr throughout this episode, at one point even brandishing a butcher knife at Barr. After dinner, Bartlett told Michael and Barr that he was going to have to kill them and dump their bodies in the country. He restrained both Michael and Barr with duct tape, and used a hanger to attach Michael's wrists to his feet. He eventually released Barr and Michael by cutting the duct tape with the butcher knife, tearing Barr's clothes and inflicting a skin wound on Barr in the process. He then demanded to be taken to the bank again where he attempted to use Michael's credit or debit cards to procure more money.

Bartlett ordered Barr to drive her car to the liquor store. He held the gun to Barr's side, got into the front passenger seat next to Barr, and demanded that Michael get into the back seat. Michael was able to obtain sixty dollars from the bank machine. Bartlett insisted that Barr drive to the liquor store, where Michael purchased more liquor.

After purchasing more liquor, Michael, Bartlett, and Barr returned to the house, at which point Bartlett ordered Michael to tie Barr up. He then tied Michael up and told him that things had gone too far, and he had no choice but to kill them. He raised his arm, pointed the gun, and shot a bullet that struck the wall approximately one to two feet from Michael's head. Bartlett attempted to fire again, becoming frustrated when the gun would not discharge. He again threatened to kill Barr and Michael by pouring kerosene on them and burning the house down. He then poured a liquid over the bodies of Barr and Michael; a liquid they could not see.

At this point in the evening, Bartlett began making sexually explicit comments about Barr. He cut her sweater and bra off of her body, untied her and brought her into the bedroom, where he attempted to penetrate her vagina with his penis. Barr attempted to delay Bartlett by telling him that she was not ready. She took his penis in her hand and jerked it. She hit Bartlett over the head with a bottle and fled, running through the hall and breaking windows along the way. She spotted a police car outside of the house and broke a window to yell for help. The police broke down the door and Barr was able to flee.

In the meantime, Michael had managed to scoot over to a knife and use it to free himself. He opened a third story window and saw the police cars. Michael jumped from this window, to a ledge, then down to the ground.

### Standard of Review

■ Bartlett argues that two of his convictions and the habitual offender enhancement cannot be sustained because they are not supported by sufficient evidence of probative value. When this Court reviews a conviction for sufficiency of the evidence, we look to the evidence most favorable to the State and all of the reasonable inferences to be drawn from such evidence. *Blanche v. State,* 690 N.E.2d 709, 712 (Ind.1998) (citing *Deckard v. State,* 670 N.E.2d 1, 3 (Ind.1996)). We will affirm the original sentence unless there is no way a reasonable trier of fact could have found the defendant guilty. We do not reweigh the evidence or assess the credibility of witnesses, but merely look to the evidence and determine whether there was substantive probative evidence to support the judgment. *Id.* (citing *Minter v. State,* 653 N.E.2d 1382, 1383 (Ind.1995)).

### Attempted Murder

■ Bartlett challenges the conviction for attempted murder, arguing that the evidence was insufficient to convict him of this crime. To sustain an attempted murder conviction, the State must prove that the defendant took a substantial step towards the intentional or knowing killing of another. Ind.Code §§ 35–41–5–1(a), 35–42–1–1(1) (1998); *Blanche,* 690

N.E.2d at 709. We find the evidence sufficient to convict Bartlett of attempted murder.

At trial, both Michael and Barr testified that Bartlett repeatedly threatened to kill Michael over a span of several hours. Bartlett told them that he would kill them if they did not behave, he told them that he would have to kill them because things had gone too far, and that he would cover them with kerosene and burn them to death. Further, after these repeated threats, Bartlett pointed and shot a gun at Michael. This shooting occurred at a very close range, the bullet hitting the floor approximately one to two feet from Michael's head. A reasonable trier of fact could have found that Bartlett intended to kill based on this evidence. It is firmly established in prior cases that using a deadly weapon in a manner likely to cause death is evidence sufficient to show that the defendant intended to kill. *Blanche*, 690 N.E.2d at 712, *Taylor v. State*, 681 N.E.2d 1105, 1111 (Ind.1997); *Nunn v. State*, 601 N.E.2d 334, 339 (Ind.1992). Pointing and shooting a gun constitutes a substantial step in furtherance of this crime. *Blanche*, 690 N.E.2d at 711. Therefore, the evidence is sufficient to convict Bartlett of attempted murder.

### Kidnapping

Bartlett also challenges the conviction for the kidnapping of Michael, arguing that while evidence established intent to use the victim as a shield or hostage as to Barr, it was not established as to Michael. Bartlett was convicted of kidnapping under Indiana Code section 35–42–3–2(b)(4) (1998), which states that a person is guilty of kidnapping if that person "knowingly or intentionally removes another person, by fraud, enticement, force, or threat of force, from one place to another: ... (4) with intent to use the person removed as a shield or hostage." Therefore, the conviction will stand as long as the evidence shows that Bartlett knowingly or intentionally removed Michael from one place to another place by the use of force or threat of force, and also that Bartlett had the intent to use Michael as a shield or hostage.[1] We hold that evidence supports the verdict and affirm the kidnapping conviction.

It is indisputable that Bartlett transported Michael from Michael's residence to a bank and a liquor store on two separate occasions. It is also undisputed that Bartlett used the threat of force against both Michael and Barr to procure Michael's compliance. The question remaining is whether Bartlett intended to use Michael as a shield or hostage. We conclude that when Bartlett held the gun to Michael's side, and ordered Barr into the truck, Michael became a hostage, and that Michael remained a hostage until he escaped.

In order to reach this conclusion, it is necessary to define the temporal span of this crime. Crimes such as kidnapping and the lesser included offense of confinement are defined under the continuing crime doctrine. *See Curry v. State*, 643 N.E.2d 963, 980 (Ind.Ct.App.1994); *Idle v. State*, 587 N.E.2d 712, 717 (Ind.Ct.App.1992). Under this doctrine, the span of the kidnapping or confinement is determined by the length of time of the unlawful detention necessary to perpetrate the crime. It begins when the unlawful detention is initiated and ends only when the victim both feels, and is in fact, free from detention. *See Curry*, 643 N.E.2d at 981; *Idle*, 587 N.E.2d at 717. In the case at bar, the unlawful detention began when Bart-

---

1. Bartlett believes that the State must prove that Bartlett used Michael as a hostage during the second trip to the liquor store because the information charging Bartlett with kidnapping while using Michael as a hostage refers specifically to this event. As will be explained in subsequent sections of this opinion, however, kidnapping is a continuing crime, and therefore requires that Michael was used as a hostage during some portion of this crime. "[T]he purpose of an information is to provide a defendant with notice of the crime for which he is charged so that he is able to prepare a defense." *Wisehart v. State*, 693 N.E.2d 23, 63 (Ind.1998). A defendant receives adequate notice of the charges against him as measured by the information as a whole. *Id.* at 63. In this instance, Bartlett was charged with eleven offenses, three of which involved the kidnapping or confinement of Michael. Together, these charges spanned the entire criminal episode. Therefore, while the judge merged the confinement charges into the kidnapping charge, this did not deprive Bartlett of adequate notice of the charges against him.

lett pointed the gun at Michael and ended only when Michael escaped. At no point before Michael's escape was he free to go. Between these two points, Michael was either tied up, under the control of the gun, or acting under the threat or fear of force.

■■■■■ Having defined the temporal span of this crime, we must now determine if the State met its burden to show that Michael was used as a hostage during this crime. The word hostage is not defined in our statutes or in prior case law, and we must therefore determine its meaning. The primary rule in statutory construction is to ascertain and give effect to the intent of the legislature. *Smith v. State*, 675 N.E.2d 693, 696 (Ind.1996) (citing *Freeman v. State*, 658 N.E.2d 68, 70 (Ind.1995)). The best evidence of legislative intent is the language of the statute itself, and all words must be given their plain and ordinary meaning unless otherwise indicated by statute. *See* Ind.Code § 1–1–4–1(1) (1998); *Ajabu v. State*, 677 N.E.2d 1035, 1042 (1997); *Bettenbrock v. Miller*, 185 Ind. 600, 606, 112 N.E. 771, 774 (1916).

The American Heritage Dictionary defines hostage as "a person held as a security for the fulfillment of certain terms." THE AMERICAN HERITAGE DICTIONARY 637 (1980). Black's Law Dictionary defines hostage as "[a]n innocent person held captive by one who threatens to kill or harm him if his demands are not met." BLACK'S LAW DICTIONARY, 664 (5th ed.1979).

■■■■■ Bartlett argues that Barr, and not Michael, was the hostage because Bartlett, during the trips to the liquor store, procured the compliance of Michael by pointing the gun at Barr. However, this result would compel the conclusion that only one person could be a hostage at any given time. We believe that this is an absurd consequence. In multiple hostage situations, it is entirely possible that a threat against one or more of the hostages may be used to obtain the compliance of others, sometimes simultaneously. Again, we reiterate that kidnapping and confinement are defined by the underlying detention and not by picking a 'hostage' and an 'actor' at each moment of the crime. Under the theory posited by Bartlett, the State would have to reprove the elements of kidnapping every time the defendant moves his gun from one victim to another. We believe that so long as a defendant detains a person as security for the performance of a demand during the course of a kidnapping, the detainee is a hostage for the purposes of our kidnapping statute.

Michael was clearly held captive for the purpose of ensuring that Barr continued to comply with Bartlett's demands. This explicitly occurred when Bartlett trained the gun on Michael and ordered Barr to drive, and again when Bartlett tied Michael up and ordered Barr into the bedroom. It also occurred when Bartlett repeatedly threatened to kill both of them if they did not comply with his demands. The evidence is sufficient to show that Michael was moved from one place to another, and that Bartlett intended to use him as a hostage.

### Habitual Offender Sentence Enhancement

Bartlett launches several objections to the use of certain documents admitted into evidence during the habitual offender stage of trial. These documents were used to prove that Bartlett had committed two previous felonies in California and Kansas. To prove the California conviction, the State admitted into evidence documents kept by the Keeper of Records for the State of California Department of Justice, an official letter of certification for the documents sent by the Keeper of Records, and a copy of all of the information kept by the California Department of Justice regarding Bartlett. The Kansas documentation included a cover letter from the Keeper of Records for the Kansas Department of Corrections, a letter of certification from the Records Supervisor, and a copy of all of the official records kept by the Kansas Department of Corrections regarding Bartlett.

Bartlett argues that these documents were inadmissible because they lacked a proper foundation, and in any event, did not fall within any of the twenty three exceptions to hearsay contained in Indiana Rule of Evidence 803. He further argues that his attorney was ineffective for the failure to object to

the admission of this evidence on hearsay grounds.[2]

To lay a foundation for the admission of evidence at trial, the proponent of the evidence must show that the evidence has been authenticated, or put simply, show by sufficient evidence that "the matter in question is what its proponent claims." Ind. Evidence Rule 901(a). A piece of evidence may be authenticated by any method described in the Indiana Rules of Evidence, or by any method provided by an Indiana statute or rule. *See* Evid. R. 901(a)(10). Where the document at issue is a domestic public record, and certified in accordance with Trial Rule 44(A)(1), the document is self-authenticating and no extrinsic evidence is necessary for its admission. Ind. Evidence Rule 902(1). A domestic official record, according to Indiana Trial Rule 44(A)(1),

> may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by his deputy.... Proof that such officer does or does not have custody of the record may be made ... by any public officer having a seal of office and having official duties in the district or political subdivision in which the record is kept, authenticated by the seal of his office.

Both the California and the Kansas documents meet with the requirements of Trial Rule 44. Both were compiled and kept by public officers in their respective states, and both were authenticated by a seal of office. Therefore, both sets of documents were properly certified under Rule 44(A)(1), and self-authenticating according to Indiana Rule of Evidence 902. A proper foundation was laid for their admission.

Bartlett next argues that this documentation constituted inadmissible hearsay. While Bartlett's counsel did not object to the admission of these documents as hearsay, and therefore the issue is technically waived, we will address this issue because Bartlett argues that his attorney was ineffective for failing to interpose such an objection. *See Whitener v. State*, 696 N.E.2d 40, 44 (Ind. 1998). As criminal records, these documents fall within the ambit of the hearsay exception regarding public records, Indiana Rule of Evidence 803(8). This rule reads in relevant part:

> (8) Public Records and Reports. Unless the source of information or other circumstances indicate lack of trustworthiness, records, reports, statements, or data compilations in any form, of a public office or agency, setting forth its regularly conducted and regularly recorded activities, or matters observed pursuant to duty imposed by law and as to which there was a duty to report,....

Both sets of documents are regularly kept public records. The Kansas documents were kept by the Kansas Department of Corrections, and the California documents were kept by the California Department of Justice. Both the California Department of Justice and the Kansas Department of Corrections are the types of agencies that regularly keep criminal records, and therefore come within the scope of rule 803(8).

We affirm the trial court.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.

---

2. Bartlett also points to several allegedly inconsistent dates on these documents, arguing that these dates rendered the documents untrustworthy. These dates also differ from the dates listed on the charging information, and Bartlett believes that these inconsistencies were grounds for a dismissal of the habitual offender charge. The date of conviction for the California auto theft charge was listed as July 18, 1979, when in fact, this was the sentencing date. The actual conviction date was June 20, 1979. The Kansas charge listed July 26, 1985 as the conviction date for attempted aggravated assault, even though Bartlett entered a guilty plea on July, 2, 1985. As the dates of conviction are clearly indicated, the documents are trustworthy. Further, the charging information adequately informed Bartlett of the charge against him. As long as the habitual offender charge gives adequate notice to the defendant of the prior convictions, minor variances between the dates in the instrument and the dates proven at trial are not fatal. *Harmon v. State*, 518 N.E.2d 797, 799 (Ind.1988).