

FILED

Apr 28 2016, 7:03 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Lisa Diane Manning
Manning Law Office
Danville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Paula J. Beller
Deputy Attorney General
Indianapolis, Indiana

<h1 style="text-align:center">IN THE<br>COURT OF APPEALS OF INDIANA</h1>

| | |
|---|---|
| Corey T. Weaver,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | April 28, 2016<br><br>Court of Appeals Case No.<br>32A04-1508-CR-1110<br><br>Appeal from the Hendricks<br>Superior Court<br><br>The Honorable Rhett M. Stuard,<br>Judge<br><br>Trial Court Cause No.<br>32D02-1410-CM-1002 |

**Mathias, Judge.**

[1]     Corey Weaver ("Weaver") was convicted in the Hendricks Superior Court for refusing to identify himself to a law enforcement official, as required pursuant to Indiana Code section 34-28-5-3.5. Weaver appeals and argues that his conviction is not supported by sufficient evidence.

We reverse and remand for proceedings consistent with this opinion.

## Facts and Procedural History

At 9:31 p.m. on October 1, 2014, Hendricks County Sheriff's Deputy Samuel Chandler ("Deputy Chandler") initiated a traffic stop of Weaver's vehicle on U.S. Highway 40 because Weaver had an inoperable plate light. Weaver pulled over into an Arby's parking lot where Deputy Chandler approached him.[1] Appellant's App. p. 12.

Deputy Chandler asked Weaver if he knew that his plate light did not work, and Weaver told the officer that he was not aware that the light was inoperable. Deputy Chandler then asked if Weaver had his license and registration. Weaver said he did not know. Tr. p. 11. Weaver started to look for his registration but was unable to find it.

Weaver eventually told the officer that he previously had an Indiana license but that he did not have it or any other form of identification with him. *Id.* at 55-56. Weaver told Deputy Chandler that he was not aware that he was required to carry identification while driving. *Id.* at 56.

After failing to produce any identification, the following conversation ensued:

> DEPUTY CHANDLER: Okay, where do you live at, bud?

---

[1] At trial, Deputy Chandler testified that the stop occurred at 10:15 p.m. in a McDonald's parking lot. Tr. p. 11. However, the video recording of the traffic stop establishes the time and location as noted above.

> COREY, WEAVER: Uh, Indianapolis.

> DEPUTY CHANDLER: You live in Indy—what's your actual physical mailing address?

> COREY WEAVER: Uh, am I being charged with something?

> DEPUTY CHANDLER: No, I'm trying to figure out who you are. You don't have any identification.

*Id.* This was the only time that Deputy Chandler specifically asked for Weaver's address.

[7] After explaining that Weaver was required to provide the requested information, Deputy Chandler again asked Weaver for his name. *Id* at 57. Weaver stated that his name was "Mr. Weaver." *Id.* at 11. After Deputy Chandler asked for his first name, Weaver stated that he did not have a particular name. *Id.* at 57. Deputy Chandler asked the same question many ways. *Id.* at 58 ("What are they calling you? . . . [D]oes your mom call you Mr. Weaver?"). Eventually, Weaver stated that his mother calls him Corey. *Id.* at 59.

[8] Weaver also failed to provide his birthdate when asked. *Id.* at 60. Weaver stated that he was "a little uncomfortable" providing his birthdate. *Id.* Approximately eight minutes after he stopped Weaver, Deputy Chandler ordered Weaver to put his hands on the back of his head and step out of the vehicle. *Id.* at 60-61; Ex. Vol. State's Ex. 1. Deputy Chandler placed Weaver in handcuffs and stated

that he was detaining Weaver until he could identify him. *Id.* at 61. Deputy Chandler told Weaver several times that he was legally required to provide identification and warned him that he would have to go to jail if he failed to comply. *See, e.g.*, *id.* at 62.

[9] Sixteen minutes after the traffic stop began, Weaver told Deputy Chandler his birthdate. *Id.* at 67. After Deputy Chandler confirmed the information Weaver provided, he determined that Weaver's driver's license had been suspended. The deputy then impounded Weaver's vehicle but allowed Weaver to leave of his own accord.

[10] On October 3, 2014, Weaver was charged with Class A misdemeanor driving while suspended and Class C misdemeanor failure to identify.[2] A bench trial was held on March 31, 2015, and was continued on July 10, 2015. Weaver represented himself at trial and was convicted as charged.

[11] Weaver was ordered to serve four days for the driving while suspended conviction but was given credit for four days served. The trial court also ordered him to pay a $100 fine. For the refusal to identify conviction, he was only

---

[2] The State also alleged that Weaver committed the following infractions: "No Operators License in Possession," "Certification of Registration; Possession Required," and "Improper or No Tail or Plate Light." Tr. p. 88; Appellant's App. at 1. The trial court concluded that Weaver committed the infractions as alleged and ordered him to pay a $100 fine for each infraction. Appellant's App. p. 46.

ordered to pay a second $100 fine. Weaver now appeals, claiming that the State produced insufficient evidence to support his refusal to identify conviction.[3]

## Standard of Review

When a party challenges the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Chappell v. State*, 966 N.E.2d 124, 129 (Ind. Ct. App. 2012) (citing *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005)), *trans denied.* Rather, we recognize the exclusive province of the trier of fact to weigh any conflicting evidence and we consider only the probative evidence supporting the conviction and the reasonable inferences to be drawn therefrom. *Id.* If there is not substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt, then the judgment will be disturbed. *Baumgartner v. State*, 891 N.E.2d 1131, 1137 (Ind. Ct. App. 2008).

## Discussion and Decision

To convict Weaver of Class C misdemeanor failure to identify, the State was required to prove that Weaver "knowingly or intentionally refuse[d] to provide . . . [his] name, address, and date of birth." Ind. Code § 34-28-5-3.5(1); *see also* Appellant's App. p. 11. Weaver argues that Indiana Code section 34-28-5-3.5

---

[3] We held oral argument in this case at Cathedral High School in Indianapolis, Indiana, on March 11, 2016. We extend our gratitude to the faculty, students, and staff of the school for their gracious hospitality, and we commend counsel for the quality of the advocacy.

does not impose a timeliness requirement and that he eventually gave his date of birth to the officer.

[14] First, we observe that penal statutes are construed strictly against the State. *Milam v. State*, 14 N.E.3d 879, 882 (Ind. Ct. App. 2014) (citing *Luhrsen v. State*, 864 N.E.2d 452, 455–56 (Ind. Ct. App. 2007)). However, we do not construe statutes so strictly that our interpretation defeats the legislature's expressed intent. *Id.*

[15] Indeed, our court must ascertain and give effect to legislative intent. *Chambliss v. State*, 746 N.E.2d 73, 78 (Ind. 2001) (citing *Bartlett v. State*, 711 N.E.2d 497, 501 (Ind. 1999)). "The best evidence of legislative intent is the language of the statute itself, and all words must be given their plain and ordinary meaning unless otherwise indicated by statute." *Id.* (quoting *Bartlett*, 711 N.E.2d at 501). We presume that the legislature intended that the statutory application would not yield "an unjust or absurd result." *Milam*, 14 N.E.3d at 882.

[16] Weaver argues that our court may not require an individual to provide the requested information to the officer within a certain amount of time because Indiana Code section 34-28-5-3.5 does not impose a time requirement. We agree, but only to a point, a point that was not reached in the facts before us.

[17] We may reasonably conclude that the General Assembly intended that a person would identify him or herself promptly when a law enforcement officer requests

such identification. Failing to require a person to promptly provide the statutorily required identification information would contravene public policy. If a person could indefinitely delay giving identification information to the requesting officer, it would make the officer's job needlessly difficult, and possibly endanger officers and drivers involved in roadside traffic stops.

[18] However, after reviewing the conversation between Weaver and Deputy Chandler, it is evident that Weaver did not refuse to give his address when asked. Instead of replying that he would not provide his address, or evading Deputy Chandler on the issue, Weaver asked a question: "Uh, am I being charged with something?" Tr. p. 56.

[19] Weaver's question was a normal and legitimate question; it was certainly not an express denial of information. Weaver then asked why he was required to identify himself if he was not being charged with a crime. Deputy Chandler explained that Weaver was required to provide the information by law, but Deputy Chandler did not return to the topic of Weaver's address at any other time during the traffic stop.

[20] Weaver's general behavior during the stop was ridiculous. Deputy Chandler properly ended Weaver's evasiveness eight minutes into the stop, ordering him out of the vehicle, and handcuffing him until he could identify him. *See* Tr. pp. 23; Ex. Vol., State's Ex. 1.

[21] Even then, Weaver's evasiveness did not abate. It took Deputy Chandler another eight minutes before he had Weaver's date of birth. Importantly, with those two (and one-half) pieces (Weaver having stated that he lived in Indianapolis) of the three pieces of information called for by the statute, Deputy Chandler was able to ascertain that Weaver was driving while suspended (a Class A misdemeanor), had a permit to carry a handgun, and had no outstanding warrants.[4]

[22] Deputy Chandler impounded Weaver's vehicle and cited Weaver for the Class A misdemeanor driving while suspended but allowed Weaver to leave the stop thereafter. Despite being the personal recipient of Weaver's evasiveness, Deputy Chandler did not arrest Weaver for his behavior. He did, however, allege probable cause to charge Weaver with Class C misdemeanor failure to identify, and two days later, the charge was added.

[23] Even with all of this in mind, and as reprehensibly as Weaver behaved, under the specific and limited facts and circumstances before us, we do not consider Weaver's question in response to being asked for his address to constitute refusal. Indeed, his legitimate question as to whether he was being arrested approaches constitutional magnitude under the statute. Because Weaver did not

---

[4] We assume that Weaver would have been arrested if he had any outstanding warrants.

refuse to provide his address, the State did not meet its burden of proving that Weaver refused to provide his name, address, and date of birth. *See* I.C. § 34-28-5-3.5(1). We therefore reverse Weaver's conviction for Class C misdemeanor failure to identify.

[24] Reversed and remanded for proceedings consistent with this opinion.

Kirsch, J., concurs.

Altice, J., dissents with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Corey T. Weaver,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | Court of Appeals Case No.<br>32A04-1508-CR-1110 |

**Altice, Judge, dissenting.**

Our standard of review requires us to affirm Weaver's conviction "unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Jackson v. State*, No. 48S02-1509-CR-554, slip op. at 4 (Ind. March 2, 2016). In my opinion, the trial court reasonably determined that the evidence in this case sufficiently established each element of the offense. Therefore, I must dissent.

As determined by the majority, I.C. § 34-28-5-3.5 should be interpreted to require an individual stopped for an infraction or ordinance violation to identify him or herself promptly when a law enforcement officer requests identifying information under the statute. There was nothing prompt about Weaver's provision of the requested information. Time and again, Deputy Chandler patiently explained that he needed to identify Weaver and that Weaver was

legally required to provide the requested information. After Weaver was unable to provide his driver's license, Deputy Chandler asked for his address and then for his name. Weaver avoided answering the question regarding his address and then became overtly evasive regarding his name, requiring another two minutes of questioning before providing his first and last name. Even if this was not enough to establish the offense of failure to identify, his subsequent refusals to provide his birthdate surely were sufficient.

[27] After the cumbersome task of determining Weaver's name, Deputy Chandler requested Weaver's birthdate. Weaver did not provide the information. At that point, Deputy Chandler removed Weaver from the vehicle, handcuffed him, and "placed him in custody for refusing to identify himself." *Transcript* at 12. Over the next eight minutes, Deputy Chandler asked Weaver at least four more times for his birthdate and each direct request was met with a refusal to answer. Deputy Chandler then indicated that he was taking Weaver to jail so that he could be identified. Weaver finally provided his birthdate approximately sixteen minutes after the stop began. By this point, a reasonable trier of fact could conclude, as did the trial court, that Weaver had already committed the offense of failure to identify. Accordingly, I would affirm Weaver's conviction.