

IN THE

# Court of Appeals of Indiana

James Easter,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*



FILED

May 04 2026, 8:40 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

May 4, 2026

Court of Appeals Case No.
25A-CR-1229

Appeal from the Marion Superior Court

The Honorable James K. Snyder, Judge

Trial Court Cause No.
49D32-2309-F3-27600

**Opinion by Judge Weissmann**
Judge Bradford concurs in result.
Judge DeBoer concurs.

**Weissmann, Judge.**

[1] James Easter grabbed his ex-girlfriend by the neck, dragged her to a nearby couch, and held her there for almost three minutes while he tried to perform oral sex on her. Though his ex-girlfriend physically and verbally resisted, Easter was eventually successful. For all this, Easter was convicted of multiple crimes, including Count I (rape by force), Count II (rape by disregarding refusal), and Count III (criminal confinement). Easter appeals his convictions on Counts II and III, arguing that each places him in substantive double jeopardy based on his conviction on Count I. In other words, he claims his actions amounted to only one crime, not three. We agree.

[2] Applying our Supreme Court's recent decision in *Moyers v. State*, No. 26S-CR-86 (Ind. March 20, 2026), we conclude that Easter's convictions on Count I (rape by force) and Count II (rape by disregarding refusal) were both based on his performance of oral sex, generally, and therefore, stemmed from the same base offense. Accordingly, we analyze Easter's substantive double jeopardy claim as to Counts I and II under the two-step test enunciated in *Powell v. State*, 151 N.E.3d 256 (Ind. 2020). At Step 2 of that analysis, we find that Easter performed a single continuous act of oral sex and, thus, committed only one rape. His dual convictions on Counts I and II therefore place him in substantive double jeopardy, and the latter must be vacated.

[3] Meanwhile, Easter's substantive double jeopardy claim as to Count I (rape by force) and Count III (criminal confinement) implicates the three-step test

enunciated in *Wadle v. State*, 151 N.E.3d 227 (Ind. 2020). At Step 2 of that analysis, a presumption of double jeopardy arises because the charging instrument was ambiguous as to whether Count III was factually included in Count I. The State had the burden to rebut this presumption at Step 3 by demonstrating that it made clear to the factfinder at trial that Counts I and III each rested on independent facts. Because neither the State's evidence nor its argument at trial distinguished between the force underlying the rape and the criminal confinement, the State cannot satisfy its burden. The presumption of double jeopardy therefore remains unrebutted, and Easter's conviction on Count III must also be vacated.

[4] Ultimately, we remand for the trial court to vacate Easter's convictions on Count II (rape by disregarding refusal) and Count III (criminal confinement) as well as the concurrent sentences issued for those convictions.

## Facts

[5] Easter and his on-again, off-again girlfriend, T.A., ended their volatile romantic relationship in July 2023. But one night that September, Easter called T.A. and asked if she could give him a ride home from work. T.A. agreed, but after she picked up Easter at work, he insisted that T.A. take him to her house instead. T.A. did not want to reconcile with Easter but did not want to argue with him either. She therefore complied with his request to go to her house. Once there, T.A. went to bed while Easter stayed up listening to music.

[6] T.A. awoke the next morning and told Easter to leave so she could get ready for the day. Easter, however, proposed that he and T.A. have sex before he left. When T.A. declined, an argument ensued and quickly escalated to Easter assaulting T.A. in various ways.

[7] A security camera in T.A.'s living room recorded a series of 10-second video clips of the assault. These were later compiled into one continuous video that is 2 minutes and 40 seconds in length. The video begins with T.A. yelling, "F**k you!" at Easter. Exh. 2 at 0:01. In response, Easter approaches T.A., screaming: "You ain't 'bout to keep yelling at me!" *Id.* at 0:04. The two briefly scuffle before Easter grabs T.A. from behind, placing his arm around her neck in a chokehold position. Easter then drags T.A. to the living room couch while shouting: "You better calm your a** down!" *Id.* at 0:12.

[8] Once at the couch, Easter sits down, pulling T.A. by her neck down onto his lap. He then further restrains T.A. by wrapping his legs around her waist. As T.A. screams and squirms in resistance, Easter shouts: "Why the f**k you tryna (sic) f**king fight for all the time!" *Id.* at 0:24. T.A. soon wiggles herself onto the floor, partially free from Easter's chokehold and leg wrap, as one 10-second video clip ends. The next clip begins with Easter and T.A. sitting side-by-side on the couch, still scuffling. Easter then stands up and begins trying to force T.A.'s legs apart with his hands. T.A. screams, "Stop!" "Quit!" and "No, don't touch me!" as she tries to kick Easter away. *Id.* at 0:33, 0:46.

[9] Eventually, Easter forces his head between T.A.'s legs and performs oral sex on her. T.A. continues to resist Easter by screaming, squirming, kicking, and punching. Roughly 2 minutes into the video, she manages to roll over onto her stomach on the couch. Easter, however, does not relent. Instead, he uses his hands to force T.A.'s legs and buttocks apart from the rear and continues performing oral sex on her. According to T.A., Easter "pull[ed her] butt so far apart" that it "felt like [she] was being ripped." Tr. Vol. II, p. 121. T.A. also described Easter "rubbing" and "grabbing" her vagina. *Id.* at 124.

[10] When the assault finally ended, T.A. called 911 and provided the responding police officers with the video clips from her security camera. The officers arrested Easter and soon learned that a no-contact order prohibited him from communicating with T.A. The State later charged Easter with seven crimes:

- Count I Level 3 felony rape by force
- Count II Level 3 felony rape by disregarding refusal
- Count III Level 5 felony criminal confinement
- Count IV Level 6 felony sexual battery
- Count V Class A misdemeanor domestic battery
- Count VI Class A misdemeanor battery
- Count VII Class A misdemeanor invasion of privacy

The State also alleged that Easter was a habitual offender.

[11] After a bench trial, the trial court found Easter guilty as charged but only entered judgments of conviction on Counts I, II, III, and VII. Easter admitted to being a habitual offender in a separate proceeding. The trial court then sentenced him to a total of 21 years in prison, including a 13-year habitual

offender enhancement, with 2 years suspended to probation. His individual sentences were as follows:

- Count I (rape by forceful compulsion) – 21 years in prison, including a 13-year habitual offender enhancement, with 2 years suspended to probation.

- Count II (rape by disregarding refusal) – 21 years in prison, including a 13-year habitual offender enhancement, with 2 years suspended to probation, all served concurrently with Counts I and III.

- Count III (criminal confinement) – 3 years in prison, all served concurrently with Counts I and II.

- Count VII (invasion of privacy) – 365 days suspended to probation, served consecutively to Count I.

## Discussion and Decision

[12] Easter appeals his convictions on Count II (rape by disregarding refusal) and Count III (criminal confinement), arguing that each places him in substantive double jeopardy based on his conviction on Count I (rape by force). "[T]he substantive bar to double jeopardy restrains the courts' power to impose multiple punishments for the same offense[.]" *A.W. v. State*, 229 N.E.3d 1060, 1064 (Ind. 2024) (emphasis omitted). Whether multiple convictions place a defendant in substantive double jeopardy presents a question of law that we review de novo. *Id.*

### I. Choosing the Analytical Framework

[13] As an initial matter, we must determine the appropriate framework under which to analyze each of Easter's substantive double jeopardy claims. In *Wadle*

and *Powell*, our Supreme Court adopted two separate tests for addressing such claims. As originally explained by the Court, the *Wadle* test applies "when a single criminal act or transaction violates multiple statutes with common elements," 151 N.E.3d at 247, and the *Powell* test applies "when a single criminal act or transaction violates a single statute and results in multiple injuries." 151 N.E.3d at 263. Recently, however, in *Moyers*, the Court redirected the inquiry to the "text and structure" of the statute or statutes at issue. No. 26S-CR-86, slip op. at 7, 9, 10, 13. According to the Court: "[T]he applicability of *Wadle* or *Powell* does not turn on whether the convictions arise from the same statute or multiple statutes." *Id.* at 11-12. "Rather, the proper test depends on whether the convictions are for offenses stemming from one base offense or two." *Id.* at 12.

[14] To illustrate the different ways in which our Legislature uses statutory text and structure to define base offenses, the *Moyers* Court highlighted three categories of criminal statutes:

> **Category One** includes statutes that define a base offense and elevated offenses as a single statutory offense, rendering *Powell* the proper test. . . . **Category Two** includes statutes that define separate base offenses and, therefore, distinct statutory offenses, meaning *Wadle* applies. And **Category Three** includes statutes that create a base offense using alternative elements. These statutes must be read carefully to discern whether the Legislature intended to define one statutory offense (meaning *Powell* applies) or multiple (meaning *Wadle* applies).

*Id.* at 8 (bolding added).

Here, we have little trouble concluding that *Wadle* applies to Easter's convictions on Count I (rape by force) and Count III (criminal confinement), as the statutes under which the counts were charged clearly define two distinct base offenses. *See* Ind. Code § 35-42-4-1(a)(1) (rape) (2023); Ind. Code § 35-42-3-3(a), (b)(1)(C) (2023) (criminal confinement). But Easter's convictions on Count I (rape by force) and Count II (rape by disregarding refusal) require a closer examination.

As the *Moyers* Court recognized, Indiana's rape statute generally falls into "Category Three" because it "create[s] a base offense with alternative elements such that distinct criminal acts can constitute the base offense." No. 26S-CR-86, slip op. at 12 (citing Ind. Code § 35-42-4-1(a), which defines four circumstances in which "sexual intercourse" constitutes Level 3 felony rape). But the Court also noted that the rape statute shares characteristics with "Category One" by creating an "elevated form[]" of its base offense. *Id.* (citing Ind. Code § 35-42-4-1(b), which provides circumstances that enhance Level 3 felony rape to a Level 1 felony). Additionally, the statute shares characteristics with "Category Two" because it defines multiple base offenses. *Id.* (citing *Stone v. State*, 226 N.E.3d 829, 833 (Ind. Ct. App. 2024), which ruled "forcible sexual intercourse" and "forcible sexual conduct" are distinct statutory offenses under Indiana's rape statute).

To be clear, *Moyers* does not require us to categorize the rape statute in the abstract to determine whether *Wadle* or *Powell* applies to Easter's dual rape convictions. Categorization is simply a tool that may assist courts in counting

the number of base offenses at issue. When a statute solely falls into "Category 1" or "Category 2," the choice of *Wadle* or *Powell* is clear. *Id.* at 8; *supra* ¶ 14. But when faced with statutory nuance and complexity, as with the rape statute, we find we must also consider the charging instrument to determine whether a defendant's convictions were for the same base offense (meaning *Powell* applies) or different base offenses (meaning *Wadle* applies).

[18] Here, Counts I and II alleged that Easter committed rape under subsection (a)(1) and (a)(4) of the rape statute, respectively. Subsection (a) provides:

> [A] person who knowingly or intentionally has sexual intercourse with another person or knowingly or intentionally causes another person to perform or submit to other sexual conduct (as defined in IC 35-31.5-2-221.5) when:
>
> (1) the other person is compelled by force or imminent threat of force;
>
> (2) the other person is unaware that the sexual intercourse or other sexual conduct (as defined in IC 35-31.5-2-221.5) is occurring;
>
> (3) the other person is so mentally disabled or deficient that consent to sexual intercourse or other sexual conduct (as defined in IC 35-31.5-2-221.5) cannot be given; or
>
> (4) the person disregarded the other person's attempts to physically, verbally, or by other visible conduct refuse the person's acts;
>
> commits rape, a Level 3 felony.

Ind. Code. § 35-42-4-1(a).[1]

[19] As used in the rape statute, "sexual intercourse" means "an act that includes any penetration of the female sex organ by the male sex organ." Ind. Code § 35-31.5-2-302. "Other sexual conduct" means "an act involving: (1) a sex organ of one . . . person and the mouth or anus of another person; or (2) the penetration of the sex organ or anus of a person by an object." Ind. Code § 35-31.5-2-221.5. *See generally Carranza v. State*, 184 N.E.3d 712, 715 (Ind. Ct. App. 2022) ("A finger qualifies as an 'object' in this context."). Thus, the text of the rape statute creates at least five base offenses: (1) rape by sexual intercourse; (2) rape by oral sex; (3) rape by anal sex; (4) rape by penetrating sex organ with object; and (5) rape by penetrating anus with object. *See Thompson v. State*, 246 N.E.3d 1251, 1255 (Ind. Ct. App. 2024) (reaching similar conclusion).[2]

---

[1] We note that subsections (a)(1) through (4) of the rape statute collectively require that the victim either refuse or be unable to consent to the defendant's sexual conduct. *See Frye v. State*, 240 N.E.3d 727, 733 (Ind. Ct. App. 2024) (observing that the inability to consent is a "unifying theme" to the circumstances provided in Ind. Code § 35-42-4-1(a)(1)-(4)). Though Counts I and II were charged under subsections (a)(1) and (a)(4) of the rape statute, respectively, we use the terms "rape by force" and "rape by disregarding refusal" throughout this opinion for clarity only. We do not view these statutory subsections as establishing distinct base offenses of rape. *Cf. Mathews v. State*, 849 N.E.2d 578, 586-87 (Ind. 2006) (discussing similarly structured arson statute, Ind. Code § 35-43-1-1(a)(1)-(4), and stating: "[The statute] does not define different B felony crimes that might be called 'arson endangering life' or 'arson causing pecuniary loss' or 'arson of a dwelling'"; rather "it defines Class B felony arson as knowingly or intentionally damaging one person's property by fire with any one of the alternative criteria in subsections (a)(1)-(4).").

[2] Because a person can both "perform" and "submit to" at least some types of other sexual conduct, the rape statute likely creates more than five base offenses. Ind. Code § 35-42-4-1(a); *see Heckard v. State*, 118 N.E.3d 823, 832 (Ind. Ct. App. 2019) (affirming dual child molesting convictions based on defendant's performance of and submission to oral sex, respectively).

[20] From all of this, we can conclude that *Powell* applies if Easter's rape convictions were based on him twice engaging in the same type of sex act with T.A., and *Wadle* applies if his convictions were based on him committing two different types of sex acts. *Cf. Jones v. State*, 159 N.E.3d 55, 62 (Ind. Ct. App. 2020) (applying *Powell* to defendant's dual battery convictions based on two acts of throwing hot water on victim); *Carranza*, 184 N.E.3d at 716 (applying *Wadle* to defendant's dual child molesting convictions based on oral sex and penetrating sex organ with object, respectively). But Counts I and II both alleged rape by "other sexual conduct" without specifying the type of sex act underlying each offense. App. Vol. II, p. 27. Thus, from the face of the charging instrument, we can only eliminate rape by sexual intercourse as the base offense for either count.

[21] Neither the rape statute nor the charging instrument resolves whether Easter's dual rape convictions were for the same base offense (*i.e.*, the same type of other sexual conduct). And *Moyers* provides no further guidance as to how we should make that determination. Seeing no other way, we look to the evidence adduced at trial. This effectively means that, to decide whether *Wadle* or *Powell* applies, we must take a sneak peek at the final step of both tests—the continuous crime inquiry—and consider how the State presented its case to the factfinder. *See infra* ¶¶ 28, 42 (identifying the continuous crime inquiry as the final step of each test); *Afolabi v. State*, No. 24A-CR-3081, slip op. at 27 (Ind. Ct. App. April 15, 2026) (recognizing that, to apply the continuous crime doctrine, "we must first identify which of the defendant's actions to analyze").

[22] Here, the evidence adduced at trial shows that both of Easter's rape convictions were based on him causing T.A. to submit to oral sex. Although T.A. testified that Easter grabbed her vagina and pulled her buttocks apart, there is no evidence that vaginal or anal penetration occurred during these acts. Moreover, the prosecutor relied solely on evidence of oral sex during closing statements, arguing: "The only thing [Easter] won't admit to is the rape. But even looking at the video evidence, you can see his head is clearly between [T.A.'s] legs in various points of the video and [her testimony] is very clear that his tongue did penetrate her vagina." Tr. Vol. II, p. 197.

[23] Having determined that both of Easter's rape convictions were based on the same type of other sexual conduct, we can finally answer the question posed by *Moyers*: do the convictions stem from "one base offense or two"? No. 26S-CR-86, slip op. at 12. We conclude they stem from one base offense. This initial counting process tells us that *Powell* applies to Easter's substantive double jeopardy claim as to Count I (rape by force) and Count II (rape by disregarding refusal). As previously stated, we also find that *Wadle* applies to Easter's claims as to Count I (rape by force) and Count III (criminal confinement).

## II. Applying *Powell* to Counts I and II

[24] We first consider Easter's claim that his conviction on Count II (rape by disregarding refusal) places him in substantive double jeopardy based on his conviction on Count I (rape by force). In *Powell*, our Supreme Court established two progressive steps for analyzing such a claim. 151 N.E.3d at 264; *see Moyers*,

No. 26S-CR-86, slip op. at 12. Those steps generally require courts to consider: (1) how the charging statute defines its unit of prosecution; and (2) whether the defendant's acts constitute a single transaction. *Powell*, 151 N.E.3d at 264.

## A.    Step One – Unit of Prosecution

[25]    At Step 1 of the *Powell* analysis, "we review the text of the statute itself." *Id.* "If the statute, whether expressly or by judicial construction, indicates a unit of prosecution, then we follow the legislature's guidance and our analysis is complete." *Id.* Here, because Indiana's rape statute does not expressly identify a unit of prosecution, *see* Ind. Code § 35-42-4-1, we must identify it through judicial construction by determining whether the statute is "conduct-based" or "results-based." *Powell*, 151 N.E.3d at 265.

[26]    "A **conduct**-based statute . . . consists of an offense defined by certain actions or behavior (*e.g.*, operating a vehicle) and the presence of an attendant circumstance (*e.g.*, intoxication)." *Id.* at 265-66 (emphasis in original). "Under these statutes, the crime is complete once the offender engages in the prohibited conduct, **regardless** of whether that conduct produces a specific result (*e.g.*, multiple victims). *Id.* at 266 (emphasis in original). "A **result**-based statute, on the other hand, consists of an offense defined by the defendant's actions **and** the results or consequences of those actions." *Id.* (emphasis in original). These statutes permit "multiple convictions when multiple consequences flow from a single criminal act." *Id.*

Indiana's rape statute sets forth a conduct-based crime because its focus is the defendant's actions—having sexual intercourse with the victim or causing them to perform or submit to other sexual conduct without their consent—not the consequences of those actions. *Cf. Moyers*, No. 26S-CR-86, slip op. at 15 (concluding criminal confinement is a conduct-based crime because "the gravamen of the offense is a person's act confining another person without their consent."). The "ultimate question," therefore, is whether the evidence shows that Easter committed one or two discrete acts of rape. *Id.*

## B.    Step Two – Single Transaction

At Step 2 of the *Powell* analysis, "a court must determine whether the facts—as presented in the charging instrument and as adduced at trial—indicate a single offense or whether they indicate distinguishable offenses." *Powell*, 151 N.E.3d at 264. "To answer this question, we ask whether the defendant's actions are so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Id.* "[T]his step effectively absorbs the common-law continuous crime doctrine." No. 26S-CR-86, slip op. at 14 (citing *Jones v. State*, 159 N.E.3d 55, 62 (Ind. Ct. App. 2020)).[3]

---

[3] Our Supreme Court has twice indicated that a *Powell* analysis proceeds to Step 2 only when, at Step 1, the text of the subject statute is deemed "ambiguous" as to its unit of prosecution. *Powell*, 151 N.E.3d at 264; *Moyers*, No. 26S-CR-86, slip op. at 14. *Moyers*, however, is the only case in which the Court has deemed a statute's unit of prosecution unambiguous at Step 1. No. 26S-CR-86, slip op. at 15. In doing so, the Court observed: "[W]e need just *Powell*'s first step to ascertain that the criminal confinement statute permits only one conviction for a single period of continuous confinement." *Id.* But after identifying the charging statute's conduct-based unit of prosecution, the Court went on to consider whether the evidence showed that the defendant "committed one or two discrete actions of criminal confinement." *Id.*

[29] Here, as discussed above, *supra* ¶ 22, the evidence adduced at Easter's trial shows that both of his rape convictions were based on his performance of oral sex. We must therefore determine whether Easter committed this sex act on one or two discrete occasions. The State argued during closing statements that "you can see [Easter's] head is clearly between [T.A.'s] legs in various points of the video." Tr. Vol. II, p. 197. But each of those "points" occurred during a roughly 1-minute span of the nearly 3-minute assault, and they were interrupted only by T.A.'s physical resistance. We therefore find that Easter committed a single continuous act of oral sex and, thus, just one rape.

[30] As Easter was convicted of the same offense on both Count I (rape by force) and Count II (rape by disregarding refusal), the dual convictions place him in substantive double jeopardy, and his conviction on Count II is contrary to law. We therefore remand for the trial court to vacate Easter's conviction on Count II and its corresponding 21-year concurrent sentence.

---

According to the *Moyers* Court, its "discrete actions" analysis was "guided by *Bartlett v. State*, 711 N.E.2d 497 (Ind. 1999)," a case in which the Court had to "define the temporal span" of a kidnapping. No. 26S-CR-86, slip op. at 15-16. The *Bartlett* Court did so by applying the "continuing crime doctrine," 711 N.E.2d at 500, a doctrine the *Moyers* Court later recognized as having been absorbed by Step 2 of the *Powell* analysis. No. 26S-CR-86, slip op. at 14. But the *Moyers* Court ultimately concluded—purportedly at Step 1—that "the evidence showed a single **continuous** confinement occurred." *Id.* at 15 (emphasis added). If discrete offenses and a continuous crime are two sides of the same coin, it seems that a *Powell* analysis also proceeds to Step 2—at least in part—when a statute's unit of prosecution is deemed unambiguously conduct-based at Step 1. *Cf. Walker v. State*, 932 N.E.2d 733, 737 (Ind. Ct. App. 2010) (concluding the continuing crime doctrine does not apply to factual situations where a defendant is charged with two or more "distinct chargeable crimes").

### III. Applying *Wadle* to Counts I and III

[31] We next turn to Easter's claim that his conviction on Count III (criminal confinement) places him in substantive double jeopardy based on his conviction on Count I (rape by force). In *Wadle*, our Supreme Court established three progressive steps for analyzing such a claim. 151 N.E.3d at 247; *see Moyers*, No. 26S-CR-86, slip op. at 12. Those steps generally require courts to consider whether: (1) the charging statutes permit multiple punishments; (2) either offense is included in the other; and (3) the defendant's acts constitute a single transaction. *Wadle*, 151 N.E.3d at 253.

### A. Step 1 – Multiple Punishments

At Step 1 of the *Wadle* analysis, we consider the language of the charging statutes to determine whether one "clearly permits multiple punishment, either expressly or by unmistakable implication." *Id.* at 248. If so, the convictions do not place the defendant in substantive double jeopardy, and our inquiry ends. *Id.* But if the charging statutes do not clearly permit multiple punishment, we proceed to Step 2. *Id.*

[32] Here, Easter's convictions on Count I (rape by force) and Count III (criminal confinement) do not place him in substantive double jeopardy at Step 1 of the *Wadle* analysis because neither of the statutes under which Easter was charged clearly permits multiple punishments. *See* Ind. Code § 35-42-4-1 (rape, generally); Ind. Code § 35-42-3-3 (criminal confinement, generally). We therefore proceed to Step 2.

## B. Step 2 – Included Offenses

[33] At Step 2 of the *Wadle* analysis, we consider the subject offenses to determine whether one is either "inherently" or "factually" included in the other. *A.W.*, 229 N.E.3d at 1067 (clarifying *Wadle* Step 2). If not, the convictions do not place the defendant in substantive double jeopardy, and our inquiry ends. *Id.* But if one offense is included in the other, we proceed to Step 3. *Id.*

### i. Inherent Inclusion

[34] To determine if an offense is inherently included in another, we apply our included-offense statute, Indiana Code § 35-31.5-2-168. *Wadle*, 151 N.E.3d at 253. That statute defines an "included offense" as one that:

> (1) is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged;
>
> (2) consists of an attempt to commit the offense charged or an offense otherwise included therein; or
>
> (3) differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person, property, or public interest, or a lesser kind of culpability, is required to establish its commission.

Ind. Code § 35-31.5-2-168.

[35] Here, Count I alleged that Easter committed rape under Indiana Code § 35-42-4-1(a)(1). That statute provides:

[A] person who knowingly or intentionally . . . causes another person to perform or submit to other sexual conduct (as defined in IC 35-31.5-2-221.5) when . . . the other person is compelled by force or threat or imminent threat of force . . . commits rape, a Level 3 felony.

Ind. Code § 35-42-4-1(a)(1).

[36] Count III alleged that Easter committed criminal confinement under Indiana Code § 35-42-3-3. That statute provides: "A person who knowingly or intentionally confines another person without the other person's consent commits criminal confinement," a Level 6 felony. Ind. Code § 35-42-3-3(a). However, the offense is a Level 5 felony if "it results in bodily injury to a person other than the confining person." Ind. Code § 35-42-3-3(b)(1)(C). To "confine" in this context "means to substantially interfere with the liberty of a person." Ind. Code § 35-42-3-1.

[37] As this Court has previously recognized, "the act of forcible rape necessarily entails some degree of confinement." *Zamilpa v. State*, 229 N.E.3d 1079, 1084 (Ind. Ct. App. 2024). Thus, criminal confinement is an "included offense" of forcible rape under our included-offense statute because the former "is established by proof of . . . less than all the material elements required to establish" the latter. Ind. Code § 35-31.5-2-168(3). Accordingly, Count III (criminal confinement) is inherently included in Count I (rape by force).

## ii.    Factual Inclusion

To determine if an offense was factually included in another, we "examine only the facts as presented on the face of the charging instrument." *A.W.* 229 N.E.3d at 1067 (emphasis omitted). "This includes examining the 'means used to commit the crime charged,' which must 'include all of the elements of the alleged lesser included offense.'" *Id.* (quoting *Wadle,* 151 N.E.3d at 251). "[W]here ambiguities exist in a charging instrument about whether one offense is factually included in another, courts must construe those ambiguities in the defendant's favor, and thus find a presumptive double jeopardy violation at Step 2." *Id.* at 1069 (internal citation omitted). "In this event, the State can later rebut this presumption at Step 3." *Id.*

Ambiguity as to one charged crime's factual inclusion in another exists when it is "conceivable," but not certain, from the facts presented on the face of the charging instrument that the means used to commit the alleged greater offense includes all the elements of the alleged lesser offense. *A.W.*, 229 N.E.3d at 1069.[4] Here, the charging instrument is ambiguous as to whether Count III (criminal confinement) was factually included in Count I (rape by force) because the allegations in those counts merely tracked the language used in

---

[4] *Accord Vanbibber v. State*, 268 N.E.3d 315, 321 (Ind. Ct. App. 2025); *Bradshaw v. State*, 239 N.E.3d 864, 871 (Ind. Ct. App. 2024) (Felix, J., dissenting).

charging statutes; they did not provide any facts regarding the means used to commit the charged offenses. Specifically:

- Count I alleged that "[Easter] did knowingly cause another person (sic) to perform or submit to other sexual conduct . . . with [T.A.] when [T.A.] was compelled by force"; and

- Count III alleged that "[Easter] did knowingly confine [T.A.] without the consent of [T.A.], said act resulting in bodily injury to [T.A.]."

App. Vol. II, p. 27.

[40] Given the charging instrument's dearth of factual allegations, we can easily conceive of facts under which Count III (criminal confinement) may or may not be factually included in Count I (rape by force). It all depends on whether the defendant confined the victim by a means other than by the force used to accomplish the rape. This ambiguity gives rise to a presumption of double jeopardy at Step 2 of the *Wadle* analysis. *A.W.* 229 N.E.3d at 1067. And the State has the burden of rebutting this presumption at Step 3. *Id.*

## C.    Step 3 – Single Transaction

[41] At Step 3 of the *Wadle* analysis, we consider the facts underlying the challenged convictions, "as presented in the charging instrument and as adduced at trial," to determine whether the defendant's actions were "so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Wadle*, 151 N.E.3d at 249 (citation omitted). If so, the convictions place the defendant in substantive double jeopardy. *Id.* But if facts

show two distinct offenses, double jeopardy does not arise. *Id.* Either way, our inquiry ends.

[42] "To accomplish Step 3, however, we must first identify which of the defendant's actions to analyze." *Afolabi*, No. 24A-CR-3081, slip op. at 27. "This is not a call for post hoc explanations of how the evidence could have been allocated between the offenses to avoid substantive double jeopardy." *Id.* Rather, "[t]he State must demonstrate that it made clear to the fact-finder at trial that the apparently included charge was supported by independent evidence such that the State made a 'distinction between what would otherwise be two of the same offenses.'" *Ratliff v. State*, 242 N.E.3d 1070, 1078-79 (Ind. Ct. App. 2024) (quoting *A.W.*, 229 N.E.3d at 1071), *trans. denied*.[5] Failure to hold the State to this standard would render Step 2's presumption of double jeopardy largely without meaning.

[43] On appeal, the State attempts to rebut the presumption of double jeopardy as to Count I (rape by force) and Count III (criminal confinement) by claiming "the criminal confinement ended before the rape began." Appellee's Br., p. 11. More specifically, the State contends the criminal confinement occurred when Easter "grabbed [T.A.'s] neck" in a "chokehold" position—"impeding her breathing"—and "moved her to the couch." Appellee's Br., p. 11. In contrast,

---

[5] *Accord Eversole v. State*, 251 N.E.3d 604, 608-09 (Ind. Ct. App. 2025), *trans. denied*; *Bolcerek v. State*, 255 N.E.3d 1206, 1219 (Ind. Ct. App. 2025), *trans. denied*; *Denny v. State*, 272 N.E.3d 210, 216 (Ind. Ct. App. 2025); *Brothers v. State*, 271 N.E.3d 589, 596 (Ind. Ct. App. 2025).

the State contends the rape occurred "[a]fter Easter pulled T.A. to the couch," when "he moved his hands from her neck" and "forced her to submit to oral sex by wrapping his legs around her and holding her down." *Id.*

[44] But the State did not make this factual distinction clear to the factfinder at trial. Rather, the State blended the force element of the rape with the confinement, creating a single undifferentiated narrative. Specifically, the State described the crimes as follows during closing statements:

> [W]e have the rape by force. The force is very clear from the video. **He threw her on the couch. He held her down**. She mentioned difficulty breathing. Not that he was strangling her, but there was a difficulty with breathing. . . . We [also] have the confinement, **holding her down on the couch**. She stated that while this was happening, it hurt. It was painful. It felt like she was being ripped in half.

Tr. Vol. II, p. 196 (emphasis added). Similarly, at sentencing, when the trial court raised a double jeopardy concern as to Count III (criminal confinement) and Count V (domestic battery), the State explained: "[C]ount III is the **holding her down on the couch**." *Id.* at 234 (emphasis added).

[45] To find that the State rebutted the presumption of double jeopardy at Step 3 of the *Wadle* analysis, we must be convinced that the factfinder could have—and did—credit distinct actions by the defendant as supporting each of the challenged offenses. *See A.W.*, 229 N.E.3d at 1071; *Ratliff*, 242 N.E.3d at 1078-79. Because our inquiry is focused on what the State made clear to the

factfinder at trial, the State cannot satisfy its burden by parsing the facts in hindsight. Nor will we do the parsing on appeal. Here, neither evidence nor argument made clear at trial that Easter's confinement and rape of T.A. were distinct offenses. The State therefore cannot rebut the presumption of double jeopardy.[6]

[46] As the State has failed in its burden to rebut the presumption of double jeopardy as to Count I (rape by force) and Count III (criminal confinement), Easter's conviction on Count III is contrary to law. We therefore remand for the trial court to vacate that conviction and its corresponding 3-year concurrent sentence.

## Conclusion

[47] Easter's convictions on Count II (rape by disregarding refusal) and Count III (criminal confinement) each place him in substantive double jeopardy based on his conviction on Count I (rape by force). As his convictions on Counts II and

---

[6] The State points to the trial court's sentencing order as evidence that double jeopardy did not occur, highlighting that the court handwrote "Grab around neck" next to Count III (criminal confinement). Appellant's App. Vol. II, p. 195. According to the State, this notation shows the court "concluded that Easter used different means to confine and rape T.A.," such that "the criminal confinement ended at the couch . . . before the rape[] began." Appellee's Br., pp. 11-12. But the meaning of the court's notation is far from clear, particularly because the court did not make similar notations beside Count I (rape by force) or Count II (rape by disregarding refusal). Had the court intended to distinguish the conduct underlying the confinement charge from the conduct underlying the rape charges, we would expect it to have annotated all three, not just one.

III are contrary to law, we remand for the trial court to vacate those convictions and their corresponding concurrent sentences.[7]

---

[7] Over the last six years, our Supreme Court has worked to bring clarity to Indiana's substantive double jeopardy doctrine. *Wadle* and *Powell* represent a valiant attempt to replace the "patchwork of conflicting precedent" that preceded them with a coherent, statute-based framework. *Wadle*, 151 N.E.3d at 235. But the two-test dichotomy those cases created, and which *A.W.* and *Moyers* subsequently refined, has proven difficult to administer in practice. The persistent struggle to choose between *Wadle* and *Powell*—neither of which "applies neatly" in every case, *Moyers*, No. 26S-CR-86, slip op. at 6—suggests that substantive double jeopardy claims might be resolved more efficiently if the analytic sequence was recalibrated.

The *Wadle* and *Powell* tests arise from the same premise: substantive double jeopardy is a matter of legislative intent. *Wadle*, 151 N.E.3d at 248; *Powell*, 151 N.E.3d at 264. What separates them is their taxonomy: *Wadle* governs the included-offense claims, while *Powell* governs multiplicity claims. But regardless of whether a defendant has been convicted of an offense and an included offense (*Wadle*) or of the same offense multiple times (*Powell*), the overriding question is the same—did the Legislature authorize multiple punishments for what is, in substance, a single criminal act or transaction? The latter part of this inquiry is inescapably factual and, in many cases, dispositive. Yet, our current substantive double jeopardy framework buries any factual analysis behind a series of abstract statutory steps.

As the dissent in *Moyers* aptly recognized, beginning a substantive double jeopardy analysis by applying our included-offense statute to the facts of the case, as charged, can often kill two birds with one stone. It employs the most consistently direct path for determining whether the Legislature authorized multiple punishments—the included-offense statute—while also examining the most concrete means by which the State can articulate the facts underlying each offense—the charging instrument. And when coupled with the presumption of double jeopardy recognized in *A.W.*, 29 N.E.3d at 1069, this early factual inquiry ensures at the outset of the analysis that the State discharged its most basic obligation at trial: explaining to the factfinder how the evidence proves the charged offenses.

Perhaps the only downside to beginning with a factual-inclusion inquiry is that our included-offense statute does nothing to show legislative intent in the realm of multiplicity. But included-offense claims substantially outnumber multiplicity claims on our docket, and most are resolved either due to factual inclusion or an unrebutted presumption of double jeopardy. Meanwhile, included-offense claims that survive the initial factual analysis proceed to a continuous crime inquiry, which multiplicity claims also require. It is not until here, it seems, that the most troublesome abstract statutory steps from *Wadle* and *Powell* become relevant. *See Walker v. State*, 932 N.E.2d 733, 737 (Ind. Ct. App. 2010) (indicating that the continuous crime doctrine only applies in two scenarios: (1) when a defendant is twice charged with the same base offense; and (2) when one charged offense is inherently included in the other), *cited with approval by Wadle*, 151 N.E.3d at 249 n.26; *see also Hines v. State*, 30 N.E.3d 1216, 1219-20 (Ind. 2015). And at least one of these steps may be less troublesome if the facts underlying the offenses have already been uncovered. *See supra* ¶¶ 20-23.

Admittedly, no framework will resolve every substantive double jeopardy claim with ease—the doctrine's complexity is a function of the Legislature's own layered statutory scheme. But the persistent difficulty with *Wadle* and *Powell* stems, at least in part, from a common structural choice: neither treat the factual-inclusion inquiry as a starting point. A framework that begins with the facts rather than abstract statutory inquiries will be more efficient. Moreover, it will better serve the doctrine's animating purpose—ensuring that no defendant is punished twice for what is, in substance, the same offense.

Remanded.


Bradford, J., concurs in result.
DeBoer, J., concurs.


ATTORNEY FOR APPELLANT

Ellen M. O'Connor
Marion County Public Defender Agency
Indianapolis, Indiana


ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana